CAMPBELL v SULLINS

Docket Nos. 236575, 243248. Submitted June 11, 2003, at Detroit. Decided June 19, 2003, at 9:00 A.M. Leave to appeal sought.

Christopher J. Campbell brought an action in the Macomb Circuit Court against Paul and Patricia Sullins, alleging violations of the Motor Vehicle Service and Repair Act (MVSRA), MCL 257.1301 *et seq.*, conversion, breach of contract, and fraud after defendant Paul Sullins allegedly failed to properly rebuild the engine of the plaintiff's 1962 Chevrolet Bel-Air. Sullins had agreed to rebuild the engine, which he did in his own garage and on his own time. Sullins was not a licensed mechanic, nor did he have a license to operate a motor vehicle repair facility. In an attempt to resolve the dispute that arose after Sullins rebuilt the plaintiff's engine, Sullins had agreed to replace the plaintiff's engine with a replacement engine that was to be rebuilt, "fresh" with "zero miles." The claims against Patricia Sullins were dismissed. Case evaluation resulted in an evaluation in favor of the plaintiff for $12,000. The plaintiff moved for summary disposition regarding his claims under the MVSRA, which the trial court denied, concluding that reasonable minds could differ regarding whether the defendant was operating a business performing services in violation of the MVSRA. At the jury trial, the trial court, Mark S. Switalski, J., granted the defendant's motions for directed verdicts regarding the plaintiff's MVSRA claims and the statutory-conversion claim. The jury rendered a verdict of no cause of action regarding the plaintiff's claims of breach of contract and fraud. The defendant requested and was awarded attorney fees and costs as case-evaluation sanctions. In Docket No. 236575, the plaintiff appealed the trial court's grant of the directed verdicts, and, in Docket No. 243248, the plaintiff appealed the award of case-evaluation sanctions. The appeals were consolidated.

The Court of Appeals *held*:

1. The trial court did not err in denying the plaintiff's motion for summary disposition regarding his MVSRA claims, and in granting the defendant's motion for a directed verdict regarding the same, because the defendant was not operating a "motor vehicle repair facility" that engaged in the business of performing maintenance or repair work on motor vehicles for compensation, which was

required to allege a cause of action under the MVSRA. MCL 257.1331, 257.1336, and 257.1337. The facts showed that the defendant had, over the years, sporadically worked on vehicles owned by the plaintiff. The work was performed without any formal agreement, and was not part of a larger profit-marking service, trade, or profession. There was no evidence that the defendant was soliciting business or advertising, or doing anything generally associated with a person who is attempting to develop a business.

2. The plaintiff's claim of statutory conversion was properly dismissed because there was no evidence that the defendant received converted property. Rather, the plaintiff claimed that the defendant converted the plaintiff's property. Even if the defendant's actions were wrongful, in that he, as the principal, eventually converted the property, his actions did not constitute the buying, receiving, or aiding in the concealment of converted property that is actionable under MCL 600.2919a.

3. The jury's verdict of no cause of action regarding the plaintiff's claims of breach of contract and fraud was not against the great weight of the evidence, and the trial court did not err in denying the plaintiff's motion for a new trial on this basis. The evidence supported both parties' theories on the claim of breach of contract, and the conflicting evidence and issues of credibility regarding whether the engine was damaged as a result of the plaintiff's or the defendant's actions was properly left to the jury. With respect to fraud, although the defendant made misrepresentations regarding the replacement engine, the defendant testified that he did not do so knowingly or recklessly—a necessary element of fraud. On the basis of this evidence, the Court of Appeals cannot say that the evidence preponderated so heavily against the verdict that a new trial on either claim is warranted.

4. Although evidence of the defendant's tax returns could arguably have been admitted under MRE 401, 402, and 403, with regard to the defendant's credibility, the trial court did not abuse its discretion in precluding the evidence. Moreover, a review of the record and facts presented shows that the plaintiff's substantial rights were not affected by the exclusion of the evidence, and any error was harmless. MRE 103(a); MCR 2.613(A).

5. The plaintiff's argument that the trial court should not have awarded attorney fees to both of the defendant's attorneys because the defendant's use of two attorneys at trial was not reasonably foreseeable at the time the plaintiff rejected the case-evaluation award is without merit. The proper consideration is not whether the attorney fees comprising an award were foreseeable at the time of rejection, but whether the fees are reasonable. The trial court

did not abuse its discretion in awarding attorney fees to the defendant's two attorneys, each from a separate law firm and each of whom handled a separate aspect of the defendant's case, because there is nothing in MCR 2.403(O) or case law that precludes an award under such circumstances.

6. The trial court properly considered the requisite factors, including the facts of the case and community legal practice, in awarding a reasonable attorney fee to each of the defendant's counsel. Although he did not testify at the evidentiary hearing, attorney Halprin submitted a detailed statement of his hours and work performed, which were proportional, and there was other testimony that Halprin's billable hours were not unreasonable, although the trial court reduced Halprin's billable rate in light of the defendant's use of two attorneys. The trial court did abuse its discretion in awarding Halprin attorney fees without the benefit of his testimony at the hearing. With regard to attorney Smith, the trial court recognized that the invoice submitted by Smith was vague and contained duplicative time. Thus, the trial court properly disallowed time as well as reduced Smith's billing rate in awarding Smith's fees. Given the court's familiarity with the case and its complexities and the testimony at the hearing, the court did not abuse its discretion in determining the reasonableness of attorney fees.

7. The trial court did not abuse its discretion in awarding costs related to the defendant's expert witness, even though the witness did not testify at the evidentiary hearing. Actual costs under MCR 2.403(O) include expert-witness fees, and the expert's detailed bill, coupled with the defendant's testimony at the hearing that he paid the expert witness fee, proved that the fee was an actual cost. Furthermore, given the fact that the trial court reduced the expert's fee, it is clear the court determined a reasonable fee based on the particular facts of the case.

8. MCR 2.403(O)(11) provides an exception to the general rule mandating an award of attorney fees, in that a court may refuse to award actual costs in the "interest of justice" if the verdict was the result of a motion under MCR 2.403(O)(2)(c). The plaintiff's claim that this case falls under this exception because the trial court granted the defendant's motions for directed verdict on two of his claims need not be addressed, because, even assuming its application, the trial court did not abuse its discretion in determining that the interest of justice did not warrant the preclusion of an award of actual costs in this case.

Affirmed.

PRETRIAL PROCEDURE — CASE EVALUATION — SANCTIONS — ATTORNEY FEES.
> In determining whether attorney fees awarded as case-evaluation sanctions are reasonable, the proper consideration is not whether the attorney fees comprising the award were foreseeable at the time of the opposing party's rejection of the case evaluation, but whether the fees are reasonable in light of the relevant factors (MCR 2.403[O][6][b]).

*Alexander V. Lyzohub* for the plaintiff.

*David L. Smith* for the defendant.

Before: GRIFFIN, P.J., and MURPHY and JANSEN, JJ.

MURPHY, J. In Docket No. 236575, plaintiff Christopher J. Campbell appeals as of right the trial court's order dismissing, pursuant to a directed verdict, his claims of violations of the Motor Vehicle Service and Repair Act (MVSRA), MCL 257.1301 *et seq.*, and statutory conversion, MCL 600.2919a. Plaintiff also challenges a jury verdict of no cause of action with respect to his claims of breach of contract and fraud.[1] In Docket No. 243248, plaintiff appeals as of right the trial court's order awarding defendant Paul Sullins case-evaluation sanctions pursuant to MCR 2.403(O). We affirm.

### I. FACTUAL AND PROCEDURAL OVERVIEW

In 1996, plaintiff, a collector of vintage "muscle" cars, asked defendant, a self-described car "nut," to rebuild a "monstrous" engine for plaintiff's 1962 Chevrolet Bel-Air. The parties came to know each other several years earlier through attendance at car shows

---

[1] Plaintiff's claims against defendant Patricia Sullins were dismissed, and those claims are not the subject of plaintiff's appeal. Therefore, for purposes of this opinion, our reference to "defendant" in the singular pertains to Paul Sullins.

and through mutual friends who were also automobile enthusiasts. Defendant had previously performed tune-up and engine work on other vehicles owned by plaintiff without having any problems develop between the parties over the quality of his work.

Defendant agreed to rebuild the engine of the Bel-Air as requested by plaintiff, and the work was performed on evenings and weekends around defendant's full-time job. Defendant performed some of the work on the engine in the garage of his home. The parties communicated by phone, and plaintiff paid defendant throughout the project whenever defendant told plaintiff he needed money. After defendant finished rebuilding the engine, plaintiff drove the vehicle; however, the Bel-Air failed to operate properly. Defendant made a couple of attempts to repair the engine without success. Defendant asserted that the engine problems were the result of improper use of the Bel-Air by plaintiff, and plaintiff alleged that the engine problems were caused by defendant's failure to properly rebuild the engine and defendant's use of old and inferior parts.

In an effort to resolve the dispute between the parties regarding the problems with the Bel-Air, defendant agreed to replace the engine with another engine (replacement engine) that he had recently rebuilt and had planned to put into another vehicle. Defendant prepared and signed a document guaranteeing that the replacement engine was completely rebuilt and "fresh" with "zero miles." Plaintiff had the replacement engine inspected, and on the basis of this inspection, it was concluded that the engine was not properly rebuilt and that old and damaged parts had been used. Some work was completed on the replace-

ment engine by a mechanic other than defendant, and the engine was placed in the Bel-Air. However, further engine problems developed with the Bel-Air. Defendant maintained that he had properly rebuilt the first engine and the replacement engine, and that he was forthright and honest throughout his dealings with plaintiff. Defendant kept and then disposed of the first engine; the parties disputed whether defendant had the right to do so.

The parts and machining for the work defendant performed on the vehicle totaled approximately $18,500, and defendant was paid $23,665 for his work. Defendant worked over two-hundred hours on the entire project. Defendant characterized the work he performed for plaintiff as a "favor."

Defendant was not a licensed mechanic at the time the work was performed for plaintiff, and, according to defendant, he did not own a facility registered with the state for motor-vehicle repair. Defendant maintained that he did not undertake the repairs as a business activity.

Plaintiff filed suit, alleging, in relevant part, violations of the MVSRA,[2] conversion, breach of contract, and fraud. As part of case evaluation under MCR 2.403, the action evaluated in favor of plaintiff in the amount of $12,000. The trial court denied plaintiff's motion for summary disposition with respect to the

---

[2] Plaintiff alleged that defendant violated the MVSRA by engaging in the business of a motor vehicle repair facility without registration, engaging in unfair and deceptive methods, failing to be a licensed or certified mechanic, failing to provide plaintiff with a written estimate, failing to inform plaintiff of his right to receive or see replacement parts, failing to provide a written statement to plaintiff certifying that the repairs were properly completed, and making false statements or misrepresentations to plaintiff.

MVSRA claim, finding that reasonable minds could differ regarding whether defendant was operating a business engaged in performing repair services in violation of the MVSRA. During the jury trial, the trial court granted defendant's motion for a directed verdict on the MVSRA claim, ruling that the MVSRA only applies to facilities, and plaintiff failed to establish a prima facie case that defendant operated a motor vehicle repair facility as defined in the act. The trial court also granted defendant's motion for a directed verdict in regard to the conversion claim, ruling that the facts did not support a claim of statutory conversion under MCL 600.2919a. The jury rendered a verdict of no cause of action in regards to the claims of breach of contract and fraud. Defendant moved for case-evaluation sanctions, requesting costs of $7,335 and attorney fees in the amount of $42,775. The trial court subsequently awarded defendant $29,767 in attorney fees and $2,613 in costs. Plaintiff appeals as of right.

II. ANALYSIS

A. MOTOR VEHICLE SERVICE AND REPAIR ACT

The first issue on appeal concerns the applicability of the MVSRA under the circumstances of this case. The issue arose below in the context of plaintiff's motion for summary disposition and defendant's motion for a directed verdict. Plaintiff argues that the trial court erred in the rulings on both motions.

Statutory construction of the MVSRA presents a question of law that this Court reviews de novo. *Crowe v Detroit*, 465 Mich 1, 6; 631 NW2d 293 (2001). A ruling on a motion for summary disposition is also reviewed de novo. *Spiek v Dep't of Transportation*, 456 Mich

331, 337; 572 NW2d 201 (1998). In reviewing a ruling granting a directed verdict, we must view the testimony and all legitimate inferences from the testimony in a light most favorable to the nonmoving party to determine whether a prima facie case was established. *Wilkinson v Lee*, 463 Mich 388, 391; 617 NW2d 305 (2000). A directed verdict is appropriate only when no factual question exists regarding which reasonable minds could differ. *Meagher v Wayne State Univ*, 222 Mich App 700, 708; 565 NW2d 401 (1997). Only if the evidence failed to establish a claim, as a matter of law, is a directed verdict appropriate. *Wilkinson, supra* at 391.

Plaintiff sought recovery pursuant to MCL 257.1331 and MCL 257.1336. MCL 257.1331 entitles a customer to recover any payments he made to an "unregistered facility" for the repair of a motor vehicle.[3] MCL 257.1336 makes a "facility" liable for violations of the MVSRA or for engaging in an unfair or deceptive method, act, or practice.[4] These two sections create

---

[3] MCL 257.1331 provides:

A person who engages or attempts to engage in the business or trade of a motor vehicle repair facility or specialty or master mechanic without a registration or certificate, or engages in an act or practice in violation of this act or a rule is barred from bringing or maintaining an action at law or equity on a contract or for the collection of compensation for work performed or materials or parts provided to any other person. In addition, the person is barred from asserting a mechanic's, garageman's, or similar lien upon a motor vehicle, including the repossession of a motor vehicle. *A customer is entitled to recover any amount paid to an unregistered facility for the repair of a motor vehicle belonging to that customer.* [Emphasis added.]

[4] MCL 257.1336 provides:

A facility that violates this act or who, in a course of dealing as set forth in this act or rules, engages in an unfair or deceptive

separate and distinct causes of action. *Hengartner v Chet Swanson Sales, Inc*, 132 Mich App 751, 755; 348 NW2d 15 (1984). "A person who directly or indirectly controls a motor vehicle repair facility or its employees, as well as a general partner, officer, or director of the facility shall be jointly and severally liable among themselves for a violation of this act . . . ." MCL 257.1337(2).

"Facility" is defined as a "motor vehicle repair facility." MCL 257.1302a(b). A "motor vehicle repair facility" is defined as "a place of business which engages in the business of performing or employing persons who perform maintenance, diagnosis, vehicle body work, or repair service on a motor vehicle for compensation . . . ." MCL 257.1302(g). If a statute's language is clear and unambiguous, this Court assumes that the Legislature intended its plain meaning and the statute is enforced as written. *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002). "[W]hen the Legislature defines a term used in the statute, the Court must accept the statutory definition." *Arrigo's Fleet Service, Inc v Michigan*, 125 Mich App 790, 792; 337 NW2d 26 (1983).

Ultimately, on the basis of the plain language of the MVSRA, and regardless of whether plaintiff is proceeding under §§ 31, 36, or 37, it must be established that defendant was operating a motor vehicle repair facility. Therefore, pursuant to the statutory definition of a

method, act, or practice, is liable as provided in this act to a person who suffers damage or injury as a result thereof in an amount equal to the damages plus reasonable attorney fees and costs. If the damage or injury to the person occurs as the result of a wilful and flagrant violation of this act, the person shall recover double the damages plus reasonable attorney fees and costs.

motor vehicle repair facility, plaintiff has a cause of action only if defendant was operating a "place of business" engaged in the business of performing automotive repair and maintenance services for compensation. MCL 257.1302(g).

There is no doubt that a person's home can be used as a "place of business," and there is no dispute that defendant used his home in the case at bar to perform the kind of automobile services, i.e., repair, maintenance, and diagnostic services, that the Legislature intended to be covered by the MVSRA. Because the evidence clearly established multiple violations of the MVSRA, assuming its applicability, the overriding question is whether defendant's home was a place of business where defendant was engaged in the business of automobile repair, or, minimally, whether there was a factual issue on the subject that required resolution by the jury. Our ultimate focus, as we see it, is on determining if defendant's actions in servicing plaintiff's Bel-Air was part of a "business" operation controlled by defendant.

We give undefined statutory terms their plain and ordinary meanings and may consult dictionary definitions. *Koontz v Ameritech Services, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002) (citations omitted). "Business" is not statutorily defined, but the dictionary definition is "an occupation, profession, or trade[;] the purchase and sale of goods in an attempt to make a profit[;] a person, partnership, or corporation engaged in commerce, manufacturing, or a service." *Random House Webster's College Dictionary* (2001). The concept of a business, as commonly understood, typically involves an operation where there is more than one customer. We find that plain-

tiff submitted insufficient evidence to show that defendant was operating a "business" as contemplated by the Legislature.

The record fails to reflect any evidence that defendant worked on motor vehicles out of his home for compensation and profit on a regular basis, or that he even worked on any person's vehicle for compensation and profit, aside from plaintiff's vehicles.[5] The evidence indicated that over the years, and in his spare time, defendant sporadically worked on vehicles owned by plaintiff, with whom he had developed a friendship. The work was not performed pursuant to any definitive agreement or formal arrangement on pricing, or as part of a larger profit-making service, trade, or profession, but reflected, more accurately, a man who loves cars and tinkering with cars, working on a friend's car with the friend giving him nominal compensation for his trouble on an informal basis. There is no indication in the record that defendant was soliciting business or advertising or doing anything generally associated with a person who is attempting to develop a successful business. In fact, plaintiff pursued defendant to have the engine work performed on the Bel-Air. Plaintiff's own testimony reflects that defendant was not operating a business. Were we to allow for the possibility of liability under the factual circumstances presented here, it could open the floodgates of litigation in every case where a "backyard" mechanic makes a faulty repair on a friend's vehicle, which clearly was not what the Legislature envisioned. We do wish to make clear, how-

---

[5] Defendant testified that by the time the parties' dealings ended, which included providing plaintiff with a replacement engine, he was left with no profit.

ever, that given the right factual circumstances, a motor vehicle repair facility could be operated out of a person's home where it is determined that a true repair "business" is being run from the home, thereby giving rise to liability under the MVSRA.

Aside from pointing out that defendant made a profit, which is arguable and was at best nominal, considering the extensive amount of time put into the project by defendant, plaintiff argues that defendant was operating a place of business because when he completed the repairs on the first engine, defendant provided plaintiff with a packet of information titled "PSI Engine Restorations 409 Build and Restoration Guide." However, the "PSI" reference was only used that one time throughout the parties' dealings in an attempt by defendant to assemble a professional looking document containing information gathered from various sources. The evidence was speculative and insufficient to show that the name represented an actual business being operated by defendant.[6] Plaintiff further cites a letter that defendant provided to plaintiff, wherein he offered plaintiff the replacement engine and referred to plaintiff as a "customer" numerous times. However, this letter, a half-page typed document, in which defendant was simply attempting to formally settle the dispute that had

---

[6] We further note that defendant testified that he performed the work for plaintiff as a favor and did not conduct the repairs as a business activity. That testimony is supported by the fact that the parties did not discuss what the project would cost and made no formal arrangements for payment. Defendant did not advertise under the name or answer the phone "PSI Restorations," and plaintiff never received any formal bills from PSI. Furthermore, given the testimony that a substantial amount of repair work to the engine after it "blew up" was completed in other places, namely plaintiff's friend's pole barn, it could reasonably be concluded that defendant's garage was not a "place of business."

arisen between the parties, does not show that defendant was actually operating a motor vehicle repair facility.

Viewed in a light most favorable to plaintiff, we find that reasonable minds would not differ on the issue and would conclude that defendant was not operating a motor vehicle repair facility, as defined in the MVSRA, and as contemplated by the Legislature. Further, in view of our holding, and in light of the documentary evidence presented at the time of the motion, the trial court did not err in denying plaintiff's motion for summary disposition with regard to the MVSRA claim.

### B. STATUTORY AND COMMON-LAW CONVERSION

Plaintiff next claims that the trial court improperly granted a directed verdict in favor of defendant on the statutory-conversion claim. We disagree.

"Statutory conversion . . . consists of knowingly 'buying, receiving, or aiding in the concealment of any stolen, embezzled, or converted property.'" MCL 600.2919a." *Head v Phillips Camper Sales & Rental, Inc,* 234 Mich App 94, 111; 593 NW2d 595 (1999).[7] The clear language of the statute indicates that "the statute is not designed to provide a remedy against the

---

[7] Specifically, MCL 600.2919a provides:

A person damaged as a result of another person's buying, receiving, or aiding in the concealment of any stolen, embezzled, or converted property when the person buying, receiving, or aiding in the concealment of any stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney's fees. This remedy shall be in addition to any other right or remedy the person may have at law or otherwise.

individual who has actually stolen, embezzled, or converted the property." *Marshall Lasser, PC v George,* 252 Mich App 104, 112; 651 NW2d 158 (2002). Rather, "[t]he actions proscribed—buying receiving, or aiding in the concealment—all occur after the property has been stolen, embezzled, or converted by the principal." *Id.* "If the Legislature had meant for the statute to also apply to the thief as well as someone who aids him, it could have written the statute to include the thief's action in possessing or concealing the property." *Id.*

Plaintiff does not claim, nor does the evidence support, that defendant received converted property; rather, plaintiff claims that defendant converted plaintiff's property, i.e., the first engine. Therefore, even if defendant's actions were wrongful, in that he, as the principal, eventually converted the property, his actions did not constitute the "buying, receiving, or aiding in the concealment of converted property" actionable under MCL 600.2919a. Thus, the evidence failed to establish a claim for statutory conversion as a matter of law, and the trial court did not err in directing a verdict in defendant's favor on this claim.

Plaintiff also argues that the trial court erred by failing to instruct the jury on plaintiff's alleged claim of common-law conversion. However, plaintiff failed to properly present his issue concerning common-law conversion for appellate review, because he did not raise it in his "Statement of Questions Involved." Thus, plaintiff waived appellate review of this issue. *McGoldrick v Holiday Amusements, Inc,* 242 Mich App 286, 298; 618 NW2d 98 (2000). Moreover, it is not entirely clear from the complaint that plaintiff ever proceeded under a theory of common-law conversion,

and more importantly, during arguments on the directed-verdict motion, plaintiff focused solely on statutory conversion and made no argument that, even if the statute was not applicable, common-law conversion would apply. Additionally, no jury instruction on common-law conversion was requested. This issue has effectively been waived by plaintiff with his failure to preserve the issue for appeal, and we find no manifest injustice befalling plaintiff in declining to address the issue. MCR 2.516(C); *Fast Air, Inc v Knight*, 235 Mich App 541, 549; 599 NW2d 489 (1999); *Phinney v Perlmutter*, 222 Mich App 513, 537; 564 NW2d 532 (1997).

## C. BREACH OF CONTRACT AND FRAUD

Plaintiff next argues that the trial court abused its discretion by denying plaintiff's motion for a new trial on the asserted ground that the jury's verdict was against the great weight of the evidence. We review the trial court's denial of a motion for a new trial for an abuse of discretion. *Ellsworth v Hotel Corp of America*, 236 Mich App 185, 196; 600 NW2d 129 (1999). In deciding whether to grant or deny a motion for a new trial, the trial court's function is to determine whether the overwhelming weight of the evidence favors the losing party. *Phinney, supra* at 525. This Court gives substantial deference to a trial court's determination that the verdict is not against the great weight of the evidence. *Ellsworth, supra* at 194. This Court and the trial court should not substitute their judgment for that of the jury unless the record reveals that the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. *Id.*

Plaintiff first argues that the jury's verdict of no cause of action regarding his claim of breach of contract was against the great weight of the evidence. We disagree.

We find that the evidence supported both parties' theories; thus, a new trial was not warranted. The testimony supported a finding that defendant negligently rebuilt or repaired the engine, and that plaintiff did not receive his "bargained-for" consideration, thereby resulting in a breach of contract. On the other hand, there was testimony that supported defendant's theory that plaintiff's own actions, in over-revving the engine and driving the vehicle before defendant completed the repairs to the engine, caused the damage to the engine.[8] Overall, there was conflicting evidence with respect to fault.

On the basis of this evidence, we fail to find that the evidence preponderated so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. This case involved credibility issues and conflicting evidence regarding whether the engine was damaged as a result of plaintiff's or defendant's actions. These issues were properly left to the jury. See *Ellsworth, supra* at 194. Therefore, the trial court did not abuse its discretion in denying plaintiff's motion for a new trial on the asserted ground that the verdict on the claim of breach of contract was against the great weight of the evidence.

Plaintiff next argues that the jury's verdict of no cause of action with respect to his claim of fraudulent

---

[8] Plaintiff contends that he could not have abused the vehicle because there is no break-in time required for race engines. However, there was conflicting evidence on this issue, and evidence that the engine was a street engine, not a race engine.

misrepresentation was against the great weight of the evidence. We disagree.

Specifically, plaintiff contends that defendant fraudulently represented to plaintiff that the replacement engine was "totally and properly rebuilt with zero hours on it." To establish a prima facie claim of fraudulent misrepresentation, a plaintiff must prove (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth or falsity, and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act on it; (5) the plaintiff acted in reliance on the representation; and (6) the plaintiff suffered damage. *M&D, Inc v McConkey*, 231 Mich App 22, 27; 585 NW2d 33 (1998).

Initially, we note that plaintiff incorrectly states that the representation made by defendant guaranteed that the replacement engine was "properly built." Defendant's representation made no such guarantee. Instead, defendant only guaranteed that the engine was completely rebuilt, fresh, and had zero miles. Accordingly, to prove fraudulent misrepresentation, plaintiff had to establish that defendant misrepresented that the engine was completely rebuilt or fresh or with zero miles.

The evidence supported a finding that defendant made misrepresentations regarding the replacement engine. An expert testified that the engine was not a fresh, completely rebuilt engine, and defendant testified that he did not replace the cam bearings because they looked fine. However, there was testimony that defendant did not knowingly or recklessly make mis-

representations. Defendant testified that he was honest with plaintiff throughout the transaction and did not make any mistakes when he rebuilt the engines. Furthermore, many of the engine problems resulted from the machining work, which was not completed by defendant, but rather, was completed by a third party. On the basis of this evidence, we cannot say that the evidence preponderates so heavily against the verdict that a new trial is warranted. Therefore, the trial court did not abuse its discretion in denying plaintiff's motion for a new trial.

### D. DEFENDANT'S TAX RETURNS

Plaintiff next claims that the trial court improperly excluded evidence that defendant did not report the income from the repairs on his federal income-tax returns. "A trial court's decision to admit evidence is within its sound discretion and will not be disturbed absent an abuse of discretion." *Chmielewski v Xermac, Inc*, 457 Mich 593, 614; 580 NW2d 817 (1998), citing *People v Bahoda*, 448 Mich 261, 289; 531 NW2d 659 (1995). "An abuse of discretion is found only if an unprejudiced person, considering the facts on which the trial court acted, would say there is no justification or excuse for the ruling made," *Ellsworth, supra* at 188, or where "the result is so palpably and grossly violative of fact and logic that it evidences perversity of will, a defiance of judgment, or the exercise of passion or bias," *Barrett v Kirtland Community College*, 245 Mich App 306, 325; 628 NW2d 63 (2001). Furthermore, "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party

is affected. . . ." MRE 103(a); see also MCR 2.613(A) (harmless error).

Plaintiff claims that the fact that defendant did not properly report the income on his tax returns was admissible to show defendant's lack of credibility or trustworthiness, and to show an attempt to avoid the jurisdiction of the MVSRA. Plaintiff's argument regarding the MVSRA was not preserved, and we decline to address it on appeal. *City of Westland v Okopski*, 208 Mich App 66, 72-73; 527 NW2d 780 (1994) (objection on one ground does not preserve an appeal on another ground). With respect to the credibility argument, while we find that the evidence was arguably admissible under MRE 401, 402, and 403, we cannot conclude that the trial court abused its discretion in precluding consideration of the evidence. Moreover, after review of the entire record and the facts presented, and assuming the evidence should have been admitted, plaintiff's substantial rights were not affected by exclusion of the evidence, MRE 103(a), and any error was harmless, MCR 2.613(A).

### E. CASE-EVALUATION SANCTIONS

Plaintiff's final argument on appeal challenges the award of case-evaluation sanctions to defendant. A trial court's decision whether to grant case-evaluation sanctions under MCR 2.403(O) presents a question of law, which this Court reviews de novo. *Meyer v City of Center Line*, 242 Mich App 560, 577; 619 NW2d 182 (2000), citing *Great Lakes Gas Transmission Ltd Partnership v Markel*, 226 Mich App 127, 129; 573 NW2d 61 (1997). The amount of sanctions imposed by the trial court is reviewed for an abuse of discretion. *Maryland Cas Co v Allen*, 221 Mich App 26, 32; 561

NW2d 103 (1997). Furthermore, the interpretation and application of court rules is a question of law that this Court reviews de novo. *Attard v Citizens Ins Co of America*, 237 Mich App 311, 328; 602 NW2d 633 (1999). As in the case at bar, a party who rejects a case-evaluation award is generally subject to sanctions if he fails to improve his position at trial. *Elia v Hazen*, 242 Mich App 374, 378; 619 NW2d 1 (2000).

Plaintiff first challenges the trial court's decision to award costs and attorney fees to both law firms representing defendant and contends that the representation by two attorneys at trial was not "reasonably foreseeable." The trial court found that the use of two attorneys from two different firms to defend against plaintiff's action was reasonable.

MCR 2.403(O)(6)(b) provides that the "actual costs" awarded to a prevailing party as case-evaluation sanctions include "a reasonable attorney fee based on a reasonable hourly or daily rate as determined by the trial judge for services necessitated by the rejection of the case evaluation." Contrary to plaintiff's contention on appeal, the assertion, that he should only be held responsible for attorney fees that were reasonably foreseeable at the time he rejected the case-evaluation award, is without merit. Plaintiff relies on *Maple Hill Apartment Co v Stine*, 131 Mich App 371, 376-378; 346 NW2d 555 (1984), for his assertion. However, *Maple Hill* was vacated by the Michigan Supreme Court, *Maple Hill Apartment Co v Stine*, 422 Mich 863 (1985), and, thus, has no precedential value. Since *Maple Hill*, this Court has held that the phrase "necessitated by the rejection," as used in MCR 2.403(O)(6)(b), "was intended as a temporal demarcation to permit recovery of reasonable attor-

ney fees incurred after [case evaluation] is rejected, not before." *Michigan Basic Prop Ins Ass'n v Hackert Furniture Distributing Co, Inc*, 194 Mich App 230, 235; 486 NW2d 68 (1992). Therefore, under the prevailing principles of law, plaintiff could be liable for any attorney fees incurred after rejection of the case evaluation, so long as those fees were reasonable. Accordingly, the proper consideration is not whether the attorney fees comprising an award must be foreseeable at the time of rejection, but whether the fees are reasonable.

In evaluating the reasonableness of an attorney fee, the trial court should consider the following factors: (1) the professional standing and experience of the attorney, (2) the skill, time, and labor involved, (3) the amount in question and the results achieved, (4) the difficulty of the case, (5) the expenses incurred, and (6) the nature and length of the professional relationship with the client. *Zdrojewski v Murphy*, 254 Mich App 50, 72; 657 NW2d 721 (2002). The trial court need not render detailed findings on the factors considered. *Michigan Nat'l Bank v Metro Institutional Food Service, Inc*, 198 Mich App 236, 241; 497 NW2d 225 (1993).

In this case, defendant employed two attorneys from different firms, attorney Smith and attorney Halprin. Defendant testified that he retained Smith because of his very broad automotive knowledge, and that Smith had a much stronger automotive background than Halprin. Smith testified that he agreed to be involved, but there was "no way" that he could be lead counsel in the case because this case was his first jury trial, and he did not have the training or competence to conduct a jury trial. In hindsight,

Smith did not believe he could have handled the jury trial. Smith, however, agreed to lend his automotive expertise to defend the case. He testified that there was no duplication of work between Halprin and himself, and they each had separate responsibilities.

In *Attard, supra* at 329-330, this Court determined that the trial court did not abuse its discretion by awarding the prevailing party costs for the work of two attorneys from the same law firm. This Court reasoned that limiting a prevailing party's ability to collect costs to those of a single attorney is contrary to the purpose behind the case-evaluation sanction rule, "which is to place the burden of litigation costs on the party that necessitates the conducting of a trial by rejecting a proposed [case-evaluation] award." *Id.* at 329.

Although *Attard* involved an award of costs for the services of several attorneys within a single firm, and our case involves an award of costs for the services of two attorneys from different firms, we find nothing in the rule or case law precluding an award under the circumstances present here. Rather, in evaluating the reasonableness of an attorney fee, the trial court should consider the factors enunciated in *Zdrojewski, supra* at 72, as noted above.

It is evident from review of the trial court's opinion and order that the court considered such factors. This case involved a six-day jury trial with expert witnesses and exhibits concerning a specialized subject matter, i.e., the mechanics of an engine. The trial court recognized that plaintiff's claims were "inextricably intertwined with the intricacies of auto engine mechanics." The court concluded: "Attorney Smith's command of auto mechanics was manifest to the

[c]ourt during trial and was a compliment to Attorney Halprin's dexterity in litigation. Thus, retention of both attorneys may not only have been reasonable, but may have been necessary for effective representation." Under these circumstances, the trial court did not abuse its discretion in awarding costs for two attorneys, one of whom had jury-trial experience and the other had specialized automotive knowledge.

Plaintiff next contends that Halprin failed to prove his bill at the evidentiary hearing and Smith failed to itemize his billings and failed to maintain contemporaneous billing records, and, thus, the trial court abused its discretion by awarding attorney fees. The trial court ruled that Halprin's billing procedure and the time he spent on the case was reasonable and awarded attorney fees of $16,980 relative to his representation. The trial court awarded attorney fees of $12,787 for Smith's representation.

"The burden of proving fees rests upon the claimant of those fees." *Petterman v Haverhill Farms, Inc*, 125 Mich App 30, 33; 335 NW2d 710 (1983) (citation omitted). The trial court is not required to accept an itemized bill on its face. *Id.* Rather, the trial court "should determine a reasonable fee based on the particular facts of the case and community legal practice," including making an inquiry into the actual services rendered such as the actual time of trial and motions. *Id.*

Along with defendant's motion seeking case-valuation sanctions, defendant submitted Halprin's signed "summary of services rendered since case evaluation" describing in detail the hours expended for each task he undertook during representation and the respective billing rates charged. Although Halprin did not

testify at the evidentiary hearing, the court found that Halprin's "listed times [were] reasonably proportional to his itemized tasks." Furthermore, there was testimony from plaintiff's expert that Halprin's billable hours were "not substantially unreasonable" for the services rendered, although the expert opined that the rate should have been lower. The court, recognizing that a lower rate may be justified when more than one attorney handles a case, reduced attorney Halprin's billing rate from $175 an hour to $140 an hour for trial work. The trial judge presided over the entire trial and was aware of the issues and complexities in the case. Therefore, it is evident that the trial court did not merely accept Halprin's billing on its face, but, rather, determined the fee "based on the particular facts of the case and community legal practice." *Petterman*, *supra* at 33. Accordingly, given the trial court's familiarity with the case, the parties' briefing of the issues, and the expert testimony regarding the reasonableness of Halprin's time and billing rate, the court did not abuse its discretion in deciding the issue without the benefit of Halprin's testimony at the evidentiary hearing.

Defendant also submitted a signed invoice by Smith, describing the number of hours expended, the work performed, and the billing rate charged. An expert testified that Smith's bills were unusual in that they did not provide adequate detail of the dates and times of his services. Another expert testified that Smith's bills were not sufficiently detailed and contained duplicative time. Recognizing that Smith's invoice was "very vague," the trial court addressed the reasonableness of the items plaintiff disputed as excessive by carefully assessing conspicuous items.

The trial court disallowed 2½ hours for preparation for a deposition, fifteen hours for waiting for trial to commence and attending voir dire, which the trial court deemed unnecessary because Smith's automotive knowledge would be of no value during the initial stages of trial, and reduced Smith's billing rate from $175 to $110 an hour because of Smith's limited role in the litigation. Therefore, it is evident that the trial court did not merely accept Smith's billing on its face, but, rather, determined the fee on the basis of the particular facts of the case and community legal practice. Accordingly we conclude that, given the court's familiarity with the case, the expert testimony at the evidentiary hearing, the trial court's apparent awareness of the issues and complexity of the case, and the court's specific mention of the relevant factors to be considered, the trial court did not abuse its discretion in determining the reasonableness of attorney fees.

Plaintiff next argues that the trial court abused its discretion by awarding $2,613 of defendant's costs related to an expert witness used by defendant during trial. The expert never appeared in court to testify at the evidentiary hearing on costs, and, thus, according to plaintiff, he was denied his due process right to cross-examine the witness. Plaintiff asserts that because the witness failed to appear at the hearing; the foundation for the bill could not be established; therefore, the expert's bill should be disallowed in its entirety. We disagree.

Case-evaluation sanctions include actual costs. MCR 2.403(O)(1). The term "actual costs" is defined, in part, as "those costs taxable in any civil action." MCR 2.403(O)(6)(a). Expert-witness fees qualify as "actual costs" under MCR 2.403(O). *Elia, supra* at

379-380. Accordingly, defendant was entitled to provable expert-witness fees.

Plaintiff contends that because the expert witness did not testify at the evidentiary hearing, the foundation for his bill could not be established, and, thus, the bill should be disallowed in total. We conclude that the detailed bill, coupled with defendant's testimony that he paid the expert-witness fee, proved that the fee was an "actual cost." Defendant submitted a detailed billing of the expert's services with his motion for case-evaluation sanctions. The bill included the date and time of each service, broken down to the minute, and totaled $3,099. Defendant testified at the evidentiary hearing that he paid the expert $5,150, that his fees were reasonable, that the expert did a thorough job, and that his bill was very fair. The trial court reduced the fee to $2,613. The reduction reflected the time billed to defendant while waiting to testify. Therefore, it is evident that the trial court did not merely accept the expert's billing on its face, but, rather, determined the fee on the basis of the particular facts of the case. *Petterman, supra* at 33. Accordingly, defendant sustained his burden of proving that the expert's fee was an actual cost.

Plaintiff also contends that he was denied his constitutional right to cross-examine the expert because the expert did not testify at the evidentiary hearing on costs. However, plaintiff failed to preserve this issue for appeal, and, further, plaintiff never subpoenaed the expert to testify at the hearing; thus, we decline to address the issue. *Fast Air, supra* at 549.

Plaintiff next argues that, pursuant to MCR 2.403(O)(11), the trial court, in the interest of justice, can refuse to award costs in cases where the verdict

is a result of a ruling on a motion after the party rejected the case evaluation. Plaintiff asserts that the trial court improperly interpreted MCR 2.403(O)(11) as inapplicable in this case. Plaintiff also argues that, in the interest of justice, the trial court should not have awarded case-evaluation sanctions because the trial court's dismissal of his MVSRA and conversion claims precluded adjudication of the matters by the jury.

MCR 2.403(O)(11) provides an exception to the general rule mandating an award of attorney fees. Pursuant to MCR 2.403(O)(11), the trial court may refuse to award actual costs in the "interest of justice" if the verdict was the result of a motion under MCR 2.403(O)(2)(c). MCR 2.403(O)(2)(c), which defines, in part, the term "verdict," provides that a verdict is "a judgment entered as a result of a ruling on a motion after rejection of the case evaluation."

Plaintiff contends that this case falls under this exception because the trial court granted defendant's motions for directed verdict on two of his claims, thereby constituting a judgment entered as a result of a ruling on a motion. The trial court concluded that MCR 2.403(O)(11) was not applicable because the court's ruling on the directed-verdict motion resulted in the dismissal of only two of the four claims presented.

We find it unnecessary to engage in judicial construction of MCR 2.403(O)(11) because, assuming its application, the trial court did not abuse its discretion[9] in determining that the interest of justice did not

---

[9] We deem it appropriate to apply the same standard of review, abuse of discretion, as utilized by this Court in reviewing a trial court's decision in regard to the interest-of-justice exception found in the sanctioning pro-

warrant the preclusion of an award of actual costs. The trial court ruled that even if MCR 2.403(O)(11) was applicable, there were "no interests that would compel [it] to exercise such discretion." The trial court further noted that the "costs of litigating the claims that [it] dismissed are indistinguishable from the costs of trying the jury claims." We do not find this reasoning to be unsound. Although the MVSRA and conversion claims were not decided by the jury, the trial court properly dismissed the claims, as discussed above, where plaintiff failed to present sufficient evidence in support of the causes of action. Defendant was required to address at trial the MVSRA and conversion claims. If anything, it would be unjust to deny defendant actual costs under the circumstances. There was no abuse of discretion.

### III. CONCLUSION

The trial court did not err in granting defendant's motions for directed verdict with respect to the MVSRA and statutory-conversion claims. Viewing the evidence in a light most favorable to plaintiff, there was insufficient evidence to support submission of the claims to the jury. Plaintiff failed to preserve and waived any claim predicated on common-law conversion. The jury verdict finding no cause of action in regards to the claims of breach of contract and fraud was not against the great weight of the evidence, and the trial court did not abuse its discretion in denying plaintiff's motion for new trial regarding these claims.

---

visions of the offer-of-judgment rule, MCR 2.405(D)(3). *Stitt v Holland Abundant Life Fellowship (On Remand)*, 243 Mich App 461, 472, 476-477; 624 NW2d 427 (2000).

The trial court did not abuse its discretion in excluding defendant's tax returns from the evidence admitted at trial. Finally, the trial court did not err in its award of case-evaluation sanctions in favor of defendant.

Affirmed.