Smolensk, P.J.
 

 Plaintiff, Michael Joseph Attard, suffered injuries as the result of an automobile accident and subsequently filed suit against defendant Citizens Insurance Company of America for benefits under the no-fault act, MCL 500.3101
 
 et seq.\
 
 MSA 24.13101
 
 et seq.
 
 After a jury trial, the court entered judgment in favor of plaintiff for $140,806.39. Plaintiff appeals as of right from the trial court’s denial of his request for attorney fees and interest pursuant to the no-fault act. Defendant cross appeals from the trial court’s denial of its motion for a partial judgment notwithstanding the verdict (JNOV) in which it requested the court to eliminate portions of the jury award and the court’s order awarding plaintiff mediation sanctions for certain work performed by plaintiff’s attorneys. We affirm in part, reverse in part, and remand for further proceedings.
 

 Plaintiff suffered a closed-head injury as the result of an automobile accident on July 19, 1991. Following the accident, plaintiff’s wife, Alice Attard, cared for plaintiff. Defendant, in turn, paid Alice for attendant care benefits under the no-fault act. The parties stipulated in their joint final pretrial order that defendant paid plaintiff all attendant care benefits due through
 
 *315
 
 June 24, 1993, and that the rate for attendant care benefits paid after that date was $15 an hour. On or about December 6, 1993, Alice terminated her employment to take care of plaintiff on a full-time basis, having elected to continue her health insurance coverage with her former employer for eighteen months as allowed under the insurance coverage continuation provisions of the Consolidated Omnibus Budget Reconciliation Act of 1985 (cobra).
 
 [1]
 
 Plaintiff presented evidence at trial that defendant agreed to pay the premiums necessary to extend Alice’s health insurance coverage under the cobra (the cobra policy) as long as it was a cost-effective option in handling plaintiff’s claim-related medical bills; however, Alice’s cobra policy lapsed on March 31, 1994, because of nonpayment of the policy premiums.
 

 Plaintiff filed his present two-count complaint in 1994. In count I, plaintiff claimed unpaid benefits, attorney fees, and interest because of defendant’s failure to comply with the provisions of the no-fault act. In count n, plaintiff claimed damages for defendant’s failure to pay the premiums on Alice’s cobra policy. After a trial lasting several days, the juiy awarded plaintiff compensation for 7,667.77 hours of attendant care that Alice had provided to plaintiff, $1,789.84 for a mattress, $9,600 for massage therapy, $2,100 for a family health-club membership, and $12,150 for defendant’s breach of the agreement to maintain health insurance for plaintiff and his family. On January 14, 1997, the trial court entered judgment against defendant in the amount of $140,806.39.
 
 [2]
 

 
 *316
 
 Plaintiff filed postjudgment motions seeking costs, mediation sanctions pursuant to MCR 2.403, a no-fault attorney fee pursuant to MCL 500.3148; MSA 24.13148, no-fault interest pursuant to MCL 500.3142; MSA 24.13142, and prejudgment interest pursuant to MCL 600.6013; MSA 27A.6013. Defendant moved for a new trial and a partial JNOV. The trial court granted plaintiffs motion for mediation sanctions and costs, but denied the motion with respect to no-fault attorney fees, finding that defendant had adequate and reasonable grounds to defend the suit. The trial court also denied plaintiffs motion to collect both prejudgment interest and no-fault interest and defendant’s motions.
 

 Plaintiff appeals as of right from the trial court’s order denying his motion for attorney fees and no-fault interest. Defendant cross appeals from the court’s order denying its motion for a partial JNOV with respect to the jury awards for massage therapy, the health-club membership, breach of the agreement to pay COBRA benefits and the court’s refusal to offset against its liability the $6,566.25 that defendant paid for plaintiff’s attendant care provided in November 1996. Defendant also cross appeals the trial court’s award of mediation sanctions to plaintiff for $14,200 of attorney fees incurred by a second attorney at trial.
 

 First, plaintiff contends that the trial court erred in refusing to award him attorney fees pursuant to MCL 500.3148; MSA 24.13148 because defendant unreasonably refused to pay him no-fault benefits. We disagree. A trial court’s finding of an unreasonable refusal
 
 *317
 
 to pay or delay in paying benefits will not be reversed on appeal unless the finding is clearly erroneous.
 
 McKelvie v Auto Club Ins Ass’n,
 
 203 Mich App 331, 335; 512 NW2d 74 (1994);
 
 United Southern Assurance Co v Aetna Life & Casualty Ins Co,
 
 189 Mich App 485, 492-493; 474 NW2d 131 (1991).
 

 Plaintiffs claim is based on the no-fault act’s attorney fee provision, MCL 500.3148(1); MSA 24.13148(1), which provides that an attorney is entitled to a reasonable fee for representing a claimant in an action for personal protection insurance benefits that are overdue and that the fee “shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.” When determining whether attorney fees are warranted for an insurer’s delay to make payments under the no-fault act, a delay is not unreasonable if it is based on a legitimate question of statutory construction, constitutional law, or factual uncertainty.
 
 Shanafelt v Allstate Ins Co,
 
 217 Mich App 625, 635; 552 NW2d 671 (1996). When an insurer refuses to make or delays in making payment, a rebuttable presumption arises that places the burden on the insurer to justify the refusal or delay.
 
 McKelvie, supra
 
 at 335.
 

 In the present case, plaintiff contends that defendant unreasonably refused to pay him for twenty-four-hour-a-day attendant care benefits provided by Alice. Plaintiff relies on defendant’s admissions that plaintiff’s physician expressed his opinion that plaintiff needed twenty-four-hour supervision; that as of June 24, 1993, there had been no material change in plaintiff’s medical condition or need for attendant care;
 
 *318
 
 that defendant had not been advised by plaintiffs physician of a reduction in need for attendant care; that defendant had access to the medical opinion and records of plaintiffs physician concerning plaintiffs need for attendant care; and that defendant had not received a medical opinion since June 24, 1993, that plaintiff did not require twenty-four-hour-a-day attendant care. Furthermore, Alice submitted affidavits attesting to the fact that she provided plaintiff with twenty-four-hour-a-day attendant care. Defendant responds that it paid Alice for only eighteen hours a day because she could not provide plaintiff with attendant care for twenty-four hours each and every day.
 

 We agree with defendant that a legitimate question of factual uncertainty existed concerning whether Alice provided twenty-four-hour-a-day attendant care for plaintiff. Alice testified that at times she provided care “by means of other people” if she could not be in the house and that she considered herself as providing care if she was available by telephone. Alice also testified that there were times when she tended to her children while plaintiff was home. In addition, she testified that she installed alarms on doors to awaken her if she fell asleep and plaintiff got up in the middle of the night. On the basis of the record before us, we conclude that Alice’s own testimony created a legitimate question of factual uncertainty concerning the amount of time that she actually provided attendant care for her husband. As a result, the trial court did not commit clear error in finding that defendant did not unreasonably refuse or delay payment of benefits.
 

 Next, plaintiff contends that the interest allowed under the no-fault act, MCL 500.3142; MSA 24.13142
 
 *319
 
 (the no-fault interest statute) is a “cost” on which he can collect prejudgment interest pursuant to MCL 600.6013(6); MSA 27A.6013(6) (the prejudgment interest statute). We agree. A trial court’s interpretation of the prejudgment interest statute is a question of law, which this Court reviews de novo.
 
 Haberkorn v Chrysler Corp,
 
 210 Mich App 354, 371; 533 NW2d 373 (1995). These two statutes at issue in this case serve different purposes. The prejudgment interest statute authorizes a party to collect interest on a money judgment recovered in a civil action, with the interest calculated from the date of filing the complaint “on the entire amount of the money judgment, including attorney fees and other costs.” MCL 600.6013(6); MSA 27A.6013(6). In
 
 Phinney v Perlmutter,
 
 222 Mich App 513, 540-541; 564 NW2d 532 (1997), we stated that the purpose of prejudgment interest is to compensate the prevailing party for expenses incurred in bringing actions for money damages and for any delay in receiving such damages. In addition, the prejudgment interest statute is a remedial statute to be construed liberally in favor of the plaintiff.
 
 McKelvie, supra
 
 at 339. On the contrary, the no-fault interest statute requires an insurer to pay simple interest of twelve percent for personal protection insurance benefits that are not paid within thirty days “after an insurer receives reasonable proof of the fact and of the amount of loss sustained.” MCL 500.3142(2); MSA 24.13142(2). Unlike prejudgment interest, which is intended to compensate a party for the delay in receiving its damages, no-fault interest is intended to penalize an insurer that is dilatory in paying a claim.
 
 Sharpe v DAIIE,
 
 126 Mich App 144, 150; 337 NW2d 12 (1983). See also
 
 Shanafelt, supra
 
 at 643-644, in
 
 *320
 
 which we noted that a plaintiff may recover both statutory interest under MCL 600.6013; MSA 27A.6013 and penalty interest under MCL 500.3142; MSA 24.13142.
 

 Our conclusion is supported by our Supreme Court’s decision in
 
 Wood v DAIIE,
 
 413 Mich 573, 589 & n 17; 321 NW2d 653 (1982), in which the Court stated that the no-fault act’s twelve percent interest on wage-loss benefits and the statutory prejudgment interest statute are not mutually exclusive, quoting with approval the reasons given by this Court in our opinion in
 
 Wood v DAIIE,
 
 99 Mich App 701, 709; 299 NW2d 370 (1980):
 

 “The purpose of the six percent interest statute is to
 
 compensate
 
 the prevailing party for the expenses incurred in bringing an action and for the delay in receiving money damages.
 
 Schwartz v Piper Aircraft Corp,
 
 90 Mich App 324, 326; 282 NW2d 306 (1979);
 
 Waldrop v Rodery,
 
 34 Mich App 1, 4; 190 NW2d 691 (1979). The 12 percent interest provision is intended to
 
 penalize
 
 the recalcitrant insurer rather than compensate the claimant. See O
 
 J Enterprises, Inc v Ins Co of North America,
 
 96 Mich App 271; 292 NW2d 207 (1980) (similar purpose intended under the Insurance Code, MCL 500.2006; MSA 24.12006). We do not consider these statutes to be mutually exclusive. Therefore, the trial court correctly ordered both the six percent and the 12% interest.” [Emphasis in original.]
 

 Because the no-fault act’s interest provision is intended to penalize the insurer for its misconduct rather than compensate the insured for damages caused by the insurer, we conclude that a prevailing plaintiff may recover no-fault penalty interest under MCL 500.3142; MSA 24.13142 as a cost subject to prejudgment interest under MCL 600.6013; MSA 27A.6013. Accordingly, we hold that the trial court
 
 *321
 
 erred in failing to include no-fault interest in plaintiff’s costs subject to prejudgment interest.
 

 We will now address defendant’s cross appeal. In its first two issues, defendant contends that the trial court erred in denying defendant’s motion for a partial JNOV pursuant to MCR 2.610 with regard to the jury’s award of $9,600 for massage therapy and $2,100 for a health-club membership. We agree. This Court reviews de novo a trial court’s ruling on a motion for jnov.
 
 Farm Credit Services of Michigan’s Heartland, PCA v Weldon,
 
 232 Mich App 662, 672; 591 NW2d 438 (1998). In reviewing a trial court’s denial of a defendant’s motion for jnov, this Court should examine the testimony and all legitimate inferences therefrom in the light most favorable to the plaintiff.
 
 Scott v Illinois Tool Works, Inc,
 
 217 Mich App 35, 39; 550 NW2d 809 (1996). A trial court should grant a motion for jnov only when there was insufficient evidence presented to create an issue for the juiy.
 
 Farm Credit Services, supra
 
 at 672. Thus, a trial court should grant a party’s motion for jnov with respect to certain damages if the jury was permitted to speculate concerning the amount of those damages.
 
 Id.
 
 at 680. See
 
 Scott v Boyne City, G & A R Co,
 
 169 Mich 265, 272; 135 NW 110 (1912), in which our Supreme Court stated that “a case should not be submitted to the jury where a verdict must rest upon conjecture or guess.”
 

 On the basis of the record in this case, we conclude that plaintiff presented insufficient evidence from which the jury could have found that he suffered $9,600 in damages related to the massage therapy or $2,100 in damages related to the health-club membership. Plaintiff’s physician, Dr. Eric Backos, testified
 
 *322
 
 that he prescribed both massage therapy and a health-club membership for plaintiff. However, plaintiff presented no evidence concerning either the cost of either the therapy or the membership. Furthermore, plaintiffs attorney admitted during his closing argument that he had failed to present any evidence of the cost of either the therapy or the membership and invited the jury to speculate concerning the award for these items.
 
 [3]
 
 Because plaintiff presented insufficient evidence to create an issue for the jury, we hold that the trial court erred in denying defendant’s motion to reduce the verdict by $11,700, .the total amount awarded for the massage therapy and the health-club membership. Having found that the trial court erred in denying defendant’s motion for JNOV with respect to the membership, we find it unnecessary to address defendant’s contention that the jury improperly awarded the cost of the health-club membership to the individual members of plaintiff’s family who were not injured in the automobile accident.
 

 Next, defendant contends that the trial court erred in denying defendant’s motion for a partial jnov pursuant to MCR 2.610 with regard to the jury’s award of $12,150 for the purchase of a health insurance policy. We agree with defendant that a portion of that jury award was improper. Alice testified that she opted to
 
 *323
 
 continue the COBRA policy after she terminated her employment, and the evidence at trial indicated that the policy provided insurance coverage for plaintiff, Alice, and their two children. Plaintiffs claim that defendant agreed to pay for the COBRA policy was supported by defendant’s March 8, 1994, letter to plaintiff and Alice that provided in pertinent part:
 

 This letter is to acknowledge our conversation regarding coverage for continuation of your health benefits with Health Alliance Plan (hap) under cobra. Citizen’s Insurance Company has elected to cover the monthly premium payment for this coverage which is $521.21. A payment draft in the amount [sic] $1,042.42 was sent to coBRAServe on February 24, 1994 to cover your January and February premiums. We will continue payment of monthly premiums as long as it is deemed a cost effective option in handling Mr. Attard’s claim related medical bills.
 

 The COBRA policy was terminated on March 31, 1994, because of nonpayment of the premium. While Alice testified that plaintiff is uninsurable, she further testified that she has spent $208 a month on other coverage for herself and the two children. Alice also testified that she spent $6,750.29 for medical expenses related to her and the children and $2,702.34 for “coverages and therapies” for plaintiff.
 
 [4]
 

 As a general rule, defendant would not be obligated to pay medical expenses for plaintiff’s family, because those family members were not injured in the accident. See
 
 Keller v Citizens Ins Co of America,
 
 199 Mich App 714, 715-716; 502 NW2d 329 (1992). However, in this case the jury found that defendant agreed
 
 *324
 
 to maintain health benefits for plaintiff and his family. While the jury awarded plaintiff $12,150 in damages because of defendant’s breach of the agreement, we conclude that the evidence did not support the entire amount of the jury’s award. We find that the $208 monthly insurance premiums that Alice paid for health insurance coverage for herself and the children were properly considered as part of plaintiffs damages, because neither Alice nor plaintiff would have had to pay any premiums for eighteen months if defendant would have continued to pay the cobra policy premiums as indicated in the March 4 letter. It is unclear from the record why the cobra policy lapsed; however, we find no evidence in the record before us that defendant terminated payments on the ground that Alice’s COBRA policy was no longer “a cost effective option” in handling plaintiff’s medical expenses. Because defendant paid the cobra policy premiums for only two months, we conclude that plaintiff presented sufficient evidence to support a jury award to plaintiff for the insurance premiums paid for the remaining sixteen months’ of the cobra policy in the amount of $208 a month or $3,328.
 

 Plaintiff also seeks reimbursement for premiums and expenses incurred after the cobra policy would have expired because she was unable to exercise a conversion option on the policy. We disagree. Lynnal Howard, a representative of Alice’s former employer, testified that when the COBRA policy expired, Alice could have converted the policy into a “conversion policy” and received insurance coverage for as long as she desired. However, plaintiff presented no evidence concerning the terms of the conversion policy. As a result, absent any evidence concerning either the
 
 *325
 
 cost of the conversion policy or the coverage provided by the policy we conclude that a jury award for any. reimbursement beyond the COBRA policy’s eighteen-month term would be speculative.
 

 We also conclude that the jury should not have awarded damages based on either the family medical expenses of $6,750.29 or the $2,702.34 incurred for plaintiff’s “coverages and therapies.” While Alice testified concerning the total amount of these expenses, plaintiff presented no evidence that these expenses would have been covered expenses under the cobra policy. As a result, we conclude that the jury’s award for either the family medical expenses or plaintiff’s “coverages and therapies” would be speculative. Accordingly, we hold that the trial court properly denied defendant’s motion for a partial JNOV with respect to the health insurance premiums for plaintiff’s family for sixteen months, but erred in denying defendant’s motion with regard to the additional medical expenses incurred by plaintiff and his family. As a result, the jury award with respect to count n should be reduced from $12,150 to $3,328.
 

 Next, defendant contends that the trial court erred in denying defendant’s motion for a partial JNOV pursuant to MCR 2.610 with respect to the jury’s award of $6,566.25 for attendant care costs incurred in November 1996. We agree. Gail Kniffel, a claims specialist for defendant, testified that on December 5, 1996, she paid $6,566.25 in attendant care benefits for the month of November 1996. Renee K. Totty, RN, one of plaintiff’s expert witnesses, testified that she prepared an audit of the attendant care that Alice provided to plaintiff. The audit indicated that defendant owed plaintiff for the cost of 7,667.77 hours of attendant
 
 *326
 
 care from June 1993 through and including November 1996:
 

 Q.
 
 An [sic] how many hours, according to your audit, did Citizens owe for attendant care
 
 from June 25th, 1993,
 
 [sic]
 
 to the end of November,
 
 1996?
 

 A.
 
 Seven six six seven point seven seven [sic] (7,667.77).
 

 Q.
 
 And do you believe that this additional 7,667.77 hours are reasonable additional hours, reasonable and necessary additional hours for attendant care that Citizens did not pay for?
 

 A.
 
 According to the records that I had to review, these are additional hours that have not yet been paid for. [Emphasis added.]
 

 Totty’s audit also indicated that Alice provided plaintiff with 648 hours of attendant care during the month of November but did not reflect any payments made by defendant during that month or claim a shortfall.
 
 [5]
 
 Totty also testified that she would have no record of payments made in December 1996. Given Totty’s testimony and the audit, we find no basis in plaintiffs claim that the 7,667.77 hours did not include those hours worked in November 1996. Furthermore, we find as significant plaintiff’s counsel’s statement during closing argument that the audit included Alice’s services provided through November 1996:
 

 Then you’re asked .. . how many hours of attendant care services were incurred after June 24th [1993] that were not paid?
 

 
 *327
 
 You get that because the only one who did an audit . . . was Renee Totty. And remember all of her credentials? If you look at Exhibit No. 21, 7,667 hours [sic]. And that is
 
 through November, 1996.
 
 Done not to this date. They say they sent a check. I don’t see any evidence of that. But you have—you can adjust that from the end of November to the 19 days that we have now. That’s 7,667 hours. [Emphasis added.]
 

 The word “through” as used by plaintiff’s counsel in the phrase “through November, 1996” is commonly understood to mean “to and including.”
 
 Random House Webster’s College Dictionary
 
 (1992).
 
 [6]
 
 Thus, plaintiff’s own closing argument referred to the 7,667.77 hours as including all claims “to and including” November 1996, consistent with Totty’s testimony and the audit. Given the undisputed evidence that defendant paid plaintiff for attendant care provided in November 1996 and that the jury awarded plaintiff compensation for the total number of attendant care hours that plaintiff requested through that month, we conclude that the trial court erred in denying defendant’s motion for a partial jnov and failing to deduct defendant’s payment of $6,566.25 from the jury award.
 

 Finally, defendant contends that the trial court erred in awarding plaintiff mediation sanctions of $14,200 to reflect seventy-one hours of work performed by a second attorney representing plaintiff at trial, although the court awarded plaintiff mediation sanctions for the same number of hours and the same hourly rate for the services of plaintiff’s lead trial attorney. We disagree. At issue is the meaning of MCR
 
 *328
 
 2.403(O)(6)(b) which provides that the “actual costs” awarded to a prevailing party at mediation includes “a reasonable attorney fee based on a reasonable hourly or daily rate as determined by the trial judge for services necessitated by the rejection of the mediation evaluation.” The interpretation and application of court rules presents a question of law that is reviewed de novo.
 
 McAuley v General Motors Corp,
 
 457 Mich 513, 518; 578 NW2d 282 (1998). While every phrase or word of a court rule should be given its commonly accepted meaning,
 
 In re EP,
 
 234 Mich App 582, 592; 595 NW2d 167 (1999), the rules should be construed to prevent absurd results, injustice, or prejudice to the public interest. See
 
 McAuley, supra
 
 at 518.
 

 Defendant contends that MCR 2.403(O)(6)(b) limits plaintiffs recovery to “a reasonable
 
 attorney
 
 fee” for a single attorney, rather than “reasonable
 
 attorneys
 
 fees” for both of plaintiff’s attorneys present at trial. This Court rejected a similar argument in
 
 J C Building Corp II v Parkhurst Homes, Inc,
 
 217 Mich App 421, 427-430; 552 NW2d 466 (1996), in which the defendant contended that the offer of judgment procedure as set forth in MCR 2.405 allowed for an award of attorney fees in the “singular” rather than in the “plural.” Both MCR 2.403 and MCR 2.405 allow the trial court to assess costs in favor of the prevailing party, which include “a reasonable attorney fee.” MCR 2.403(O)(6)(b); MCR 2.405(A)(6); MCR 2.405(D). In
 
 J C Building, supra
 
 at 427-430, we rejected the defendant’s contention that the costs assessed against it pursuant to MCR 2.405 improperly included an award of attorney fees for the work of several different attorneys, and found that it was not
 
 *329
 
 unreasonable for the trial court to award attorney fees that included time for work performed by several attorneys from one law firm on a single case. We concludé that the same reasoning applies in the present case in which plaintiff was represented at trial by two attorneys from the law firm of Iiss and Associates, P.C.
 
 [7]
 
 Furthermore, defendant’s restrictive interpretation of MCR 2.403(O)(6) is contrary to the purpose behind the mediation sanction rule, which is to place the burden of litigation costs on the party that necessitates the conducting of a trial by rejecting a proposed mediation award.
 
 Michigan Basic Property Ins Ass’n v Hackert Furniture Distributing Co, Inc,
 
 194 Mich App 230, 235; 486 NW2d 68 (1992). To limit a prevailing party’s ability to collect litigation costs to those of a single attorney is contrary to this purpose, because it would restrict the party’s costs to a fee charged by a single attorney, even if the party had incurred costs related to work performed by several members of the same law firm on the case. Under our court rules, a client is represented by every member of the law firm which that client employs. See MCR 2.117(B)(3)(b), which provides that “[t]he appearance of an attorney is deemed to be the appearance of every member of the law firm,” and that “[a]ny attorney in the firm may be required by the court to conduct a court ordered conference or trial.” Because plaintiff was represented by the Liss law firm, we conclude that “a reasonable attorney fee” awarded as a cost under MCR 2.403(C)(6) may include the fees
 
 *330
 
 for work performed on plaintiffs case by different attorneys within the firm.
 

 Having determined that plaintiff may receive fees for work performed by a second attorney at trial, we will set aside the trial court’s award of attorney fees only if it constituted an abuse of discretion.
 
 Joerger v Gordon Food Service, Inc,
 
 224 Mich App 167, 178; 568 NW2d 365 (1997). The present case involved a six-day jury trial with numerous witnesses and exhibits. Arthur Y. Liss, plaintiff’s principal attorney, executed a sworn bill of costs in which he stated that a second attorney attended the trial. After reviewing plaintiff’s motion for costs, the trial court reduced the requested hourly rate of plaintiff’s attorney from $225 to $200. Under these facts, we cannot say that the trial court abused its discretion by awarding plaintiff costs for the fee of the second attorney who participated at the trial.
 

 To summarize our holding today, we direct the trial court to reduce the verdict in the amount of $27,088.25 to reflect the improper jury awards for the massage therapy, health-club membership, health expenses related to Alice’s cobra policy, and defendant’s payment for attendant care provided in November 1996. In addition, we note that the trial court incorrectly computed the amount of plaintiff’s attendant care in its judgment as 7677.77 hours, rather than 7667.77 hours as awarded by the jury, and direct the trial court to reduce its judgment by $150 to reflect this clerical error. Finally, we direct the trial court to amend its judgment to include the no-fault act’s statutory interest pursuant to MCL 500.3142; MSA 24.13142 as a cost assessed against defendant subject to pre
 
 *331
 
 judgment interest as allowed under MCL 600.6013(6); MSA 27A.6013(6).
 

 Affirmed in part, reversed in part, and remanded to the trial court for proceedings consistent with this opinion. We do not retain jurisdiction. No taxable costs pursuant to MCR 7.219, neither party having prevailed in full.
 

 [1]
 

 Pub L 99-272, tit X, § 10002(a), 29 USC 1161
 
 et seq.
 

 [2]
 

 We note that the trial court incorrectly calculated the amount of the award for attendant care (payable at the rate of $15 an hour) on the basis
 
 *316
 
 of 7677.77 hours rather than the actual jury verdict of 7,667.77 hours. As a result, the judgment should be reduced by $150 to correct this clerical error.
 

 [3]
 

 Plaintiffs attorney made the following statement during closing argument:
 

 You have the massage therapy. And maybe I didn’t do a good job, I didn’t give you a price on that. And you have the health club. And if I didn’t meet my burden in proving what that is, you can fill in [sic] if you know what a health club would cost for that. And if you can’t, don’t do it.
 

 [4]
 

 It is unclear from the record what types of “coverages and therapies” plaintiff received.
 

 [5]
 

 The audit summary, entitled “Attard Monthly Summary,” was admitted into evidence.
 

 [6]
 

 A court may establish the meaning of a term through a dictionary definition. See
 
 Michigan Millers Mut Ins Co v Bronson Plating Co,
 
 445 Mich 558, 568; 519 NW2d 864 (1994).
 

 [7]
 

 While Iiss’ bill of costs did not name the second trial attorney, defendant’s brief identified the attorney as a member of the Iiss law firm.