# STATE OF MICHIGAN

# COURT OF APPEALS

PATRICK QUICK,

        Plaintiff-Appellee,

v

THOMAS RYAN,

        Defendant,

and

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

        Defendant-Appellant.

UNPUBLISHED
September 22, 2016

No.   328006
Livingston Circuit Court
LC No.   14-028009-NI

Before:  JANSEN, P.J., and K. F. KELLY and O'BRIEN, JJ.

PER CURIAM.

Defendant-Appellant, Farm Bureau General Insurance Company of Michigan, appeals as of right the circuit court's June 2, 2015 order awarding plaintiff $65,947.50 in attorney fees, $2,158.75 in costs, and $1,329.52 in pre-judgment interest after a jury ruled in favor of plaintiff, Patrick Quick, in this dispute involving Farm Bureau's failure to pay a no-fault insurance claim.[1] We vacate the trial court's attorney fee award.[2]

Plaintiff was injured in a motor-vehicle accident in August 2013. Emergency medical services personnel responded to the scene, and he was then taken to St. John Providence Health System, complaining of neck and back pain. Hospital personnel found that plaintiff had "full range of motion of arms and legs with no discomfort," and all x-rays were negative. Plaintiff

---

[1] The June 2, 2015 order awards attorney fees at an hourly rate of $225.00 per hour for "293.1 hours."

[2] Defendant, Thomas Ryan, is not involved in this appeal.

was diagnosed with a "[c]ervical and lumbar strain," given pain medication, and discharged. According to plaintiff's fiancée, plaintiff "wasn't himself" after being discharged, so he visited a second hospital on the day of the accident, St. Joseph Mercy Livingston Hospital, where he was diagnosed with a concussion, given pain medication, and discharged. The day after the accident, plaintiff began treatment with Frederick Lewerenz, D.O., who referred plaintiff to Won Chae, M.D. Dr. Chae took x-rays of plaintiff's "lumbosacral spine" and "elbow," all of which were negative as well. Nevertheless, Lewerenz concluded, based on the records described above, that plaintiff was "totally disabled from returning to work" for 30 days and would require daily (seven days per week) eight-hour assistance for activities ranging from walking to washing dishes to driving.

In November 2013, Dr. Lewerenz again concluded that plaintiff was totally disabled from returning to work for an additional 30 days. He also sent plaintiff for further testing, including an electromyography (EMG) and MRIs by Peter Peer, D.O., that was to occur over the next two months. According to Dr. Peer, the MRIs of plaintiff's spine were negative. Dr. Lewerenz disagreed. The disparity between Dr. Lewerenz's opinion and that of all other medical personnel who had examined plaintiff led Farm Bureau to eventually request that Dr. Theresa M. Oney-Marlow perform an independent medical examination of plaintiff. Dr. Oney-Marlow did so, and, as discussed below, reached conclusions largely consistent with those of most medical personnel that had examined plaintiff to this point except for Dr. Lewerenz. Specifically, Dr. Oney-Marlow opined that plaintiff suffered a "[c]ervical and lumbar strain" and that no further treatment, especially household, attendant, and transportation assistance, was necessary.

In light of Dr. Oney-Marlow's opinion, Dr. Lewerenz referred plaintiff to another physician, Maria S. Noitakis, M.D., for more MRIs in January 2014. Dr. Noitakis's MRIs documented numerous injuries, including several disc bulges, nerve root compressions, and neural foraminal narrowing, which, according to Lewerenz, were permanent and required a variety of treatments such as heat application, "stimulating muscles electronically," "ultrasonic sound waves," massage, whirlpools, and tissue stretching. In light of these newly discovered injuries, Dr. Oney-Marlow reviewed additional diagnostic studies and MRIs and further opined that these new injuries were not caused by the motor-vehicle accident at issue in this case. In short, Dr. Oney-Marlow's opinion did not change. At this point, Farm Bureau discontinued paying insurance benefits.[3] Plaintiff accordingly filed this no-fault claim.

Proceedings progressed, and Farm Bureau eventually sought leave to file a second amended answer, asserting a counterclaim for fraud. The circuit court granted that motion in light of the various inconsistencies cited above as well as Facebook posts depicting plaintiff as being present in and near a muddy Jeep at an event called "Mud Jam."[4] The case proceeded to a

---

[3] Up until this point, Farm Bureau apparently had paid $73,114.52 in benefits.

[4] Plaintiff admitted that he added a "transfer case" to his Jeep before the event to allow it to handle bumps well, that he transported his Jeep to the event on a trailer, and that the Jeep was covered in mud in the pictures. He denied, however, participating in the event; rather, according to him, he was merely present with the muddy Jeep to watch.

jury trial, the jury returned a verdict in plaintiff's favor, and he was awarded $25,016.75 for "allowable expenses arising out of the accident," $25,752.80 for "work loss arising out of the accident," and $2,815.66 for "[p]ayment for PIP expenses was overdue." Plaintiff subsequently moved for attorney fees pursuant to MCL 500.3148, costs pursuant to MCL 600.2401, and prejudgment interest pursuant to MCL 600.6013.[5] The circuit court granted plaintiff's motion, largely discrediting Dr. Oney-Marlow's opinion as unbelievable and not acknowledging anything that supported it. As a result, the circuit court awarded plaintiff $65,947.50 in attorney fees, $2,158.75 in costs, and $1,329.52 in prejudgment interest. This appeal followed.

At issue in this case is the interpretation and application of MCL 500.3148(1), which provides as follows:

> An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue. The attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making property payment.

MCL 500.3148(1) establishes two prerequisites for the award of attorney fees in an action for overdue personal or property protection insurance benefits: (1) "the benefits must be overdue, meaning 'not paid within 30 days after [the] insurer receives reasonable proof of the fact and of the amount of loss sustained,' " and (2) "the insurer 'unreasonably refused to pay the claim or unreasonably delayed in making proper payment.' " *Moore v Secura Ins*, 482 Mich 507, 517; 759 NW2d 833 (2008) (citations omitted; alterations in original).

When an insurer refuses to make or delays in making a no-fault payment, a rebuttable presumption arises that its refusal to pay or delay in paying was unreasonable. *Attard v Citizens Ins Co of America*, 237 Mich App 311, 317; 602 NW2d 633 (1999). An insurer has the burden to rebut this presumption of unreasonableness and can do so by justifying its refusal or delay in making payment. *McKelvie v Auto Club Ins Ass'n*, 203 Mich App 331, 335; 512 NW2d 74 (1994). A delay in making payment is not unreasonable so long as it is based on a legitimate question of statutory construction, constitutional law, or factual uncertainty. *Attard*, 237 Mich App at 317. "[T]he scope of the inquiry under § 3148 is not whether the insurer ultimately is held responsible for a given expense, but whether its initial refusal to pay the expense was unreasonable." *McCarthy v Auto Club Ins Ass'n*, 208 Mich App 97, 105; 527 NW2d 524 (1994). "[A]n insurer's initial refusal to pay benefits under Michigan's no-fault insurance statutes can be deemed reasonable even though it is later determined that the insurer was required to pay those benefits." *Moore*, 482 Mich at 525. Trial courts are required to "engage in a fact-specific inquiry to determine whether the 'insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.' " *Id*. at 522 (citation and internal quotation marks omitted).

---

[5] Specifically, plaintiff requested that he be awarded $132,255.00 in attorney fees at an hourly rate of $450.00 per hour for "293.9 hours," $5,878.54 in costs, and $1,329.52 in prejudgment interest.

In this case, the circuit court found that Farm Bureau's refusal to pay the claim was unreasonable and awarded plaintiff $65,947.50 in attorney fees. After hearing Farm Bureau's argument that its independent medical examination and other medical records created a bona fide factual dispute, the circuit court explained, in pertinent part, as follows:

> *The Court*: So all you have to do is hire whomever you want and they can say plaintiff's wrong and I'm supposed to rely on that? That's a bona fide factual dispute? Then there would never -- if there's a trial there would never be attorney fees 'cause you're always gonna find someone that will say what you want. You are not gonna be at this trial unless you found somebody that you want. That's absurd to say an IME's enough.

> *Farm Bureau's Counsel*: Well, and that I mean it's no more absurd than going to treating doctors who are known and well known for treating plaintiff following motor vehicle accidents.

> *The Court*: I have no idea that that's true. That's your opinion. There's nothing on the record --

> *Farm Bureau's Counsel*: Well that's what Dr. Lewerenz testified --

> *The Court*: -- there's nothing --

> *Farm Bureau's Counsel*: -- to.

> *The Court*: -- that -- no, he didn't --

> *Farm Bureau's Counsel*: He testified that he's been retained numerous times by plaintiffs. And he's testified over 1,000 times --

> *The Court*: And how many times did yours?

> *Farm Bureau's Counsel*: I don't think they could recall.

> *The Court*: They couldn't recall anything really if my memory serves me. I don't remember.

> *Farm Bureau's Counsel*: And --

> *The Court*: I don't remember. I don't remember. That's all she does really. She was horrible. Anything else? Okay. There's a bona fide factual dispute? No, does not exist. Maybe the jury didn't catch onto her the fact that she didn't remember anything. How many hours she does this, how many times she's testified for an insurance company, how much she's made, how much she charges, didn't have a clue. She was offensive. And she didn't look at anything to prepare. She did what she was bought and paid to do. It was unreasonable to deny the claims.

-4-

On appeal, our determination as to "whether an insurer acted reasonably presents a mixed question of fact and law." *Moore*, 482 Mich at 516 (citation and internal quotation marks omitted). "What constitutes reasonableness is a question of law, but whether the defendant's denial of benefits is reasonable under the particular facts of the case is a question of fact." *Ross v Auto Club Group*, 481 Mich 1, 7; 748 NW2d 552 (2008). Questions of law are reviewed de novo. *Id*. Findings of fact, however, are reviewed for clear error. *Ivezaj v Auto Club Ins Ass'n*, 275 Mich App 349, 352-353; 737 NW2d 807 (2007). "A decision is clearly erroneous where, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id*. at 353 (citation and internal quotation marks omitted). Ultimately, a trial court's decision to award attorney fees is reviewed for an abuse of discretion. *Peterson v Fertel*, 283 Mich App 232, 235; 770 NW2d 47 (2009).

Applying the rules set forth above to this case, we conclude that the circuit court's attorney-fee award was based on factual findings that were clearly erroneous. In essence, the circuit court concluded that Dr. Oney-Marlow's opinion was unbelievable. However, Michigan law is clear in this regard—an insurer is not required to reconcile competing or conflicting medical opinions. *Moore*, 482 Mich at 521-522. Rather, an insurer is required to "evaluate [the] evidence as well as evidence supplied by the insurer's doctor before making a reasonable decision regarding whether to provide the benefits sought." *Id*. at 523. "[A]n insurer may reasonably rely on the medical opinion of its physicians and the IMEs the physicians perform[.]" *Tinnin v Farmers Ins Exch*, 287 Mich App 511, 516; 791 NW2d 747 (2010). Here, Farm Bureau relied on Dr. Oney-Marlow's opinion that plaintiff suffered a cervical and lumbar strain.[6] This

---

[6] As indicated above, after physically examining plaintiff as well as reviewing various records completed by other physicians and reports completed regarding the accident, Dr. Oney-Marlow opined that plaintiff suffered only a cervical and lumbar strain, which was consistent with the emergency-room records. Indeed, the record reflects that Dr. Oney-Marlow had sufficient medical training, skill, expertise, or knowledge in the field, *Thompson v Detroit Auto Inter-Ins Exch*, 133 Mich App 375, 383-385; 350 NW2d 261 (1984), had physically examined plaintiff as well as reviewed various medical and legal records involved in this case, *McCarthy*, 208 Mich App at 104-105, and reached her conclusion based on objective findings, *Roberts v Farmers Ins Exch*, 275 Mich App 58, 70; 737 NW2d 332 (2007). Specifically, Dr. Oney-Marlow testified that she had been trained in physical medicine and rehabilitation. She indicated that she physically examined plaintiff and reviewed "medical records from St. Joseph Mercy Hospital, diagnostic studies, Auto Loss Notice Report, and State of Michigan Traffic Crash Report, Application for Benefits form, health insurance claim form, and physical therapy notes" as well as multiple MRIs. Based on this, Dr. Oney-Marlow concluded that plaintiff suffered a "[c]ervical and lumbar strain injury following a motor vehicle collision" but did not require "any further treatment." While her opinion in this regard was different from that of Dr. Lewerenz and Dr. Noitakis, two of several physicians that plaintiff visited, the fact that Dr. Oney-Marlow's opinion differed from some, but certainly not all, other medical professionals involved does not, in and of itself, render it unbelievable as the circuit court concluded. Indeed, the record includes a substantial amount of medical information supporting Dr. Oney-Marlow's opinion, not Dr. Lewerenz's and Dr. Noitakis's opinions. See *Roberts*, 275 Mich App at 70. For example, various x-rays, CT scans, and subsequent MRIs were ordinary; medical personnel at the hospital

conclusion, coupled with the conflicting results from the various examinations performed by other medical personnel, created a reasonable basis to deny plaintiff's claim. While it is certainly apparent that the circuit court was not a fan of Dr. Oney-Marlow, its feelings in this regard are not objectively supported by the record.[7] Instead, the record reflects sufficient conflicting medical documentation to support Farm Bureau's decision to deny plaintiff's claim.[8] Thus, the circuit court clearly erred in finding Farm Bureau's denial unreasonable and, therefore, abused its discretion in awarding plaintiff attorney fees.

Accordingly, we vacate the circuit court's June 2, 2015 order awarding plaintiff $65,947.50 in attorney fees. Defendant, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly
/s/ Colleen A. O'Brien

---

reached an opinion, i.e., that plaintiff suffered a "[c]ervical lumbar strain secondary to [a] motor-vehicle accident," consistent with Dr. Oney-Marlow's ultimate opinion; and a different hospital recommended no further treatment. Thus, there was absolutely a bona fide factual uncertainty as to whether plaintiff was entitled to benefits.

[7] As indicated above, the circuit court described Dr. Oney-Marlow as "horrible," "offensive," and "bought and paid" for.

[8] We are also unpersuaded by the circuit court's opinion that an emergency-room record "rarely tells us anything unless it's just a horrific kind of crash," that people "don't feel pain immediately," and that "the ER doesn't catch" "soft tissue" injuries. The circuit court's medical opinion in this regard is not supported by the record.