*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NICHOLAS MCLAUGHLIN, as Guardian of
MARVEL LII MCLAUGHLIN, a Legally
Incapacitated Person,

UNPUBLISHED
March 23, 2023

      Plaintiff-Appellee,

v

No. 359660
Oakland Circuit Court
LC No. 2020-183518-NI

ANNA TAVENNER, MICHELE CHAMBERS-
TAVENNER, also known as MICHELE
CHAMBERS and MICHELE TAVENNER, and
FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

      Defendants,

and

ALLSTATE FIRE & CASUALTY INSURANCE
COMPANY,

      Defendant-Appellant.

Before: RICK, P.J., and SHAPIRO and LETICA, JJ.

PER CURIAM.

In this first-party no-fault case, defendant Allstate Fire & Casualty Insurance Company appeals as of right the trial court's order granting plaintiff[1] attorney fees, having found unreasonable delay by defendant in the payment of personal injury protection benefits (PIP). For

---

[1] Plaintiff refers to Nicholas McLaughlin. Marvel McLaughlin is legally incapacitated and all claims were brought on her behalf by her guardian, Nicholas McLaughlin.

-1-

the reasons stated in this opinion, we affirm in part, vacate in part, and remand for further proceedings.

## I. BACKGROUND

This case arises from injuries Marvel McLaughlin suffered on June 19, 2020, when she was struck by a motor vehicle while crossing an intersection as she was riding her bicycle. As a result of the serious injuries she sustained, plaintiff was appointed McLaughlin's temporary legal guardian. McLaughlin had no-fault insurance with defendant at the time of the accident.

This appeal primarily concerns whether defendant's delay in payment of wage-loss benefits and certain medical expenses owed to McLaughlin was unreasonable. On July 7, 2020, plaintiff sent a letter to defendant requesting payment of McLaughlin's wage-loss benefits. Attached to the letter was McLaughlin's earning statement, disability certificate, and authorization forms to disclose medical records and employer information. On September 16, 2020, plaintiff filed a breach-of-contract claim against defendant for failing to make payments as required under the no-fault act, MCL 500.3101 *et seq.*, for wage loss and other benefit claims. Plaintiff sent another letter and additional attachments to defendant on January 13, 2021, requesting payment of wage-loss benefits. Defendant first made payment to McLaughlin for wage-loss benefits on May 28, 2021, shortly before the scheduled deposition of claims adjuster Amy Smith. However, payment was made only for the period of January 1, 2021, to May 29, 2021. Smith's deposition was rescheduled for July 27, 2021, and she admitted at that time that McLaughlin was owed wage-loss payments for the months immediately after her accident, June 2020 to December 2020, but she had not approved payment for that period because she believed that additional investigation was required. Payment for this period was made on August 6, 2021.

Regarding medical expenses, McLaughlin had health insurance with Blue Cross Blue Shield of Michigan (BCBSM) through her employer, but defendant remained the primary insurer responsible to pay her medical expenses. On September 15, 2020, BCBSM sent a letter to defendant seeking reimbursement for medical expenses in the amount of $53,878.64. At a pretrial hearing over a year later on October 26, 2021, defendant admitted that it was responsible for the BCBSM lien and it could not provide the trial court an answer for why the lien had not been paid. Defendant paid the lien in full later that day. Defendant had generally paid McLaughlin's other medical expenses. However, as of the pretrial hearing, there remained discrepancies between plaintiff's and defendant's records regarding medical bills that were paid and ones that are outstanding. On November 10, 2021, the parties settled these claims before trial, with defendant agreeing to pay 100% of the outstanding medical costs as claimed by plaintiff.

Prior to the settlement, plaintiff had moved for attorney fees and interest under MCL 500.3148(1), arguing that defendant unreasonably delayed payment of the wage-loss benefits. After the settlement regarding the unpaid medical expenses, defendant responded to plaintiff's request for attorney fees, maintaining that payment of the wage benefits and medical expense claims were not unreasonably delayed. The trial court held a hearing on the motion for attorney fees and found defendant unreasonably delayed paying wage loss and medical expense claims. Accordingly, the trial court awarded plaintiff attorney fees and interest on the delayed claims. This appeal followed.

## II. ANALYSIS

## A. UNREASONABLE DENIAL

Defendant first argues that the trial court erred by finding that it unreasonably delayed in making proper payment. We conclude that the trial court did not err when it granted attorney fees on the wage-loss claims and the BCBSM medical reimbursement lien. However, the trial court did not make adequate factual findings to support its determination that defendant unreasonably delayed paying the remainder of the outstanding medical expenses.[2]

"The goal of the no-fault insurance system was to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses." *Shavers v Kelley*, 402 Mich 554, 578-579; 267 NW2d 72 (1978). PIP benefits are "overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained." MCL 500.3142(2). MCL 500.3148(1) provides:

> An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue. The attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.

Accordingly, two statutory prerequisites must be met for an award of attorney fees:

> First, the benefits must be overdue, meaning not paid within 30 days after [the] insurer receives reasonable proof of the fact and of the amount of loss sustained. Second, in postjudgment proceedings, the trial court must find that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment. [*Moore v Secura Ins*, 482 Mich 507, 517; 759 NW2d 833 (2008) (quotation marks and citation omitted).]

"When an insurer refuses to make or delays in making payment, a rebuttable presumption arises that places the burden on the insurer to justify the refusal or delay." *Attard v Citizens Ins Co of America*, 237 Mich App 311, 317; 602 NW2d 633 (1999). "The insurer can meet this burden by showing that the refusal or delay is the product of a legitimate question of statutory construction, constitutional law, or factual uncertainty." *Ross v Auto Club Group*, 481 Mich 1, 11; 748 NW2d

---

[2] "The trial court's decision about whether the insurer acted reasonably involves a mixed question of law and fact. What constitutes reasonableness is a question of law, but whether the defendant's denial of benefits is reasonable under the particular facts of the case is a question of fact." *Ross v Auto Club Group*, 481 Mich 1, 7; 748 NW2d 552 (2008). "Whereas questions of law are reviewed de novo, a trial court's findings of fact are reviewed for clear error. A decision is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted). "We will not disturb a trial court's findings concerning a plaintiff's claim for attorney fees pursuant to MCL 500.3148(1) unless the finding is clearly erroneous." *Ivezaj v Auto Club Ins Ass'n*, 275 Mich App 349, 352-353; 737 NW2d 807 (2007).

552 (2008). "MCL 500.3148(1) requires that the trial court engage in a fact-specific inquiry to determine whether the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment." *Moore*, 482 Mich at 522 (quotation marks and citation omitted).

## 1. WAGE LOSS

Defendant argues that it did not unreasonably delay paying wage-loss benefits because plaintiff failed to provide adequate documentation to initiate defendant's review of McLaughlin's claim. Defendant emphasizes that it is a secondary insurer, and, as a secondary insurer, it must ensure no other insurance has covered or provided wage-loss benefits before it makes payment.

Defendant is correct that McLaughlin coordinated her wage-loss benefits between defendant and her long-term disability coverage through her employer. When no-fault coverage and another insurance provider are coordinated, the no-fault insurer is secondary, meaning the no-fault insurer will cover expenses that are in excess of what the other insurance will cover. *Farm Bureau Gen Ins Co v Blue Cross Blue Shield of Mich*, 314 Mich App 12, 21; 884 NW2d 853 (2016). However, because of federal preemption, a self-funded Employee Retirement Income Security Act (ERISA), 29 USCS 1001 *et seq.*, insurance provider is an exception to this rule. See *Auto Club Ins Ass'n v Frederick & Herrud, Inc*, 443 Mich 358, 373-387; 505 NW2d 820 (1993). A self-funded ERISA plan is generally secondary to a no-fault policy even where the insured coordinates benefits. See *id*.

In this case, McLaughlin's long-term disability coverage was a self-funded ERISA plan and thus defendant served as the primary insurer responsible for paying the wage-loss benefits. Defendant does not dispute this but argues that it obtained this information only in May 2021. Therefore, defendant contends, because there was a factual uncertainty of whether McLaughlin received coverage from other insurance, and whether defendant served as a secondary insurer, it did not unreasonably delay payment.

However, there was no factual dispute that needed to be resolved that would justify denial of payment. Defendant only needed to clarify information related to McLaughlin's other insurance. Defendant does not dispute that an employment authorization form would be sufficient to review the wage-loss claims, but instead maintains that the form provided by plaintiff was not legible. This matter would have been resolved earlier had defendant requested plaintiff provide a clearer authorization form after first receiving the form in July 2020. But defendant did not do so. Defendant had another opportunity to obtain the necessary information after plaintiff sent a second request for wage-loss benefit payment in January 2021. The letter and an attachment from plaintiff's employer informed defendant that McLaughlin had long-term disability benefits through her employer, not short-term disability. Although defendant's claim adjuster, Amy Smith, testified that she still had unresolved questions after receiving this information, Smith admitted that other than checking with the litigation claims adjustor, she did not take any other actions to resolve her unanswered questions until May 2021 when she spoke with McLaughlin's employer. It is unclear why this phone conversation did not occur much earlier. Still, even then, Smith approved only wage-loss payments to cover January 2021 to May 2021. Smith testified that she did not pay the wage-loss benefits owed for June 2020 to December 2020 because she still had unresolved questions related to McLaughlin's disability coverage through her employer. Smith

-4-

did not adequately explain why her conversations with McLaughlin's employer satisfied her review for wage-loss payment between January 2021 to May 2021, but not for the other months.

As the Supreme Court recently stated, "insurers who receive a claim for PIP benefits prior to expiration of the limitations period must act diligently when investigating, responding to, and resolving the claim[.]" *Griffin v Trumbull Ins Co*, 509 Mich 484, 502; 983 NW2d 760 (2022). The record is clear in this case that defendant did not take sufficient action to seek clarification on the documentation provided by plaintiff. Accordingly, the trial court did not clearly err when it found defendant unreasonably delayed paying wage-loss benefits.

## 2. MEDICAL EXPENSES

Defendant next argues that the trial court erred by finding that it unreasonably delayed payment for medical expense claims.[3]

As an initial matter, the trial court did not err by awarding attorney fees for the delay in defendant's payment of the BCBSM lien. Once it has been established there was a delay in payment, the "burden [shifts to] the insurer to justify" the delay. *Attard*, 237 Mich App at 317. Defendant did not satisfy its burden. When the trial court inquired why defendant failed to pay the lien, defendant conceded it was responsible for the lien and it was not sure why the lien was not paid. Defendant had notice of the lien long before it paid it off in October 2021 because BCBSM sent the letter requesting reimbursement to defendant over a year earlier on September 15, 2020. Plaintiff also notified defendant of the existence of the lien in the initial disclosures. Therefore, the trial court did not err when it found defendant failed to sufficiently justify its delay in paying the lien.

---

[3] Defendant also argues that plaintiff improperly raised her claim for attorney fees relating to medical expenses in a reply brief that was filed without the trial court's approval. Defendant is referring to the fact that plaintiff's original motion for attorney fees pertained only to the wage-loss benefits. However, after the outstanding medical expenses were settled, defendant filed a response acknowledging that plaintiff was now seeking attorney fees for unreasonably delayed payment of wage-loss benefits *and* medical expenses. The response stated, "[Plaintiff] now seeks attorney fees for what they contend to be an unreasonable delay in and/or unreasonable refusal of payments related to medical bills and wage loss." Plaintiff then filed a reply brief, presenting arguments as to the delay in payment of both wage-loss benefits and medical expenses.

Arguably, defendant's response brief acknowledging that plaintiff was seeking attorney fees for medical expenses constitutes a waiver of this issue. In any event, MCR 2.119(A)(2)(b) states: "*Except as permitted by the court* or as otherwise provided in these rules, no reply briefs, additional briefs, or supplemental briefs may be filed." (Emphasis added). Although plaintiff did not seek preapproval to file a reply brief, the trial court's statements at the hearing on attorney fees show that the trial court impliedly permitted the filing of the reply brief. For these reasons, defendant's argument is without merit.

However, the trial court failed to conduct a "fact-specific inquiry" regarding payment of the remainder of the medical expenses. *Moore*, 482 Mich at 522. The trial court stated:

> This Court has already ruled that the Defendant in this case has unreasonably delayed in making proper payment based on the fact that the payments were not made until the eve of trial. The payments were made at 100 percent.
>
> The Court was—the payments—it appears that the attorneys exchanged, as well as the adjusters, just never had the time to get their arms around anything. There was no significant basis as to why it shouldn't be paid other than they just hadn't had the opportunity to review everything.

The trial court's reference to the parties' settlement on "the eve of trial" indicates that the court assumed that because defendant paid the full outstanding medical expense amount, defendant also conceded it unreasonably delayed paying those expenses. However, this assumption is not supported by the record. At the pretrial hearing, the parties agreed there were discrepancies in the records concerning what claims were paid and which remained outstanding. The trial court did not address whether defendant's position on the outstanding claims was unreasonable, or inquire whether the discrepancies were attributable to defendant. Rather, it appears the trial court relied on the settlement agreement to find defendant liable for the attorney fees. However, "the scope of inquiry under § 3148 is not whether the insurer ultimately is held responsible for a given expense, but whether its initial refusal to pay the expense was unreasonable." *McCarthy v Auto Club Ins Ass'n*, 208 Mich App 97, 105; 527 NW2d 524 (1994). Further, we have held that "[c]lear error will be found where a trial court does not focus on the facts surrounding the disputed expenses, but instead concludes that the refusal to pay was unreasonable because the jury awarded the claimed expenses." *Bonkowski v Allstate Ins Co*, 281 Mich App 154, 171; 761 NW2d 784 (2008). Although in this case there was a settlement and not a jury determination, we find this caselaw applicable given the implicit similarity. Therefore, we remand the case to allow the trial court to conduct a fact-specific inquiry on the reasonableness of defendant's delay in paying the outstanding medical costs, other than the BCBSM lien.

## B. ATTORNEY FEE AWARD

Defendant also argues that the trial court abused its discretion by failing to conduct the proper inquiry regarding the reasonableness of the amount ordered to be paid.[4]

In *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 275; 884 NW2d 257 (2016), "the Supreme Court defined a three-step process by which a trial court is to determine a reasonable attorney fee for purposes of MCL 500.3148(1)." *Komendat v Gifford*, 334 Mich App 138, 152; 964 NW2d 75 (2020).

---

[4] "We review a trial court's award of attorney fees and costs for an abuse of discretion. An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016).

First, the trial court "must begin its analysis by determining the reasonable hourly rate customarily charged in the locality for similar services." Second, having determined the proper hourly rate, "[t]he trial court must then multiply that rate by the reasonable number of hours expended in the case to arrive at a baseline figure." Third, "the trial court must consider all of the remaining [factors set forth in *Wood v Detroit Auto Inter-Ins Exch*, 413 Mich 573; 321 NW2d 653 (1982), and in MRPC 1.5(a)] to determine whether an up or down adjustment [of the baseline fee] is appropriate." [*Komendat*, 334 Mich App at 152-153.]

The *Pirgu* Court identified the factors that the trial court must consider as follows:

(1) the experience, reputation, and ability of the lawyer or lawyers performing the services,

(2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly,

(3) the amount in question and the results obtained,

(4) the expenses incurred,

(5) the nature and length of the professional relationship with the client,

(6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer,

(7) the time limitations imposed by the client or by the circumstances, and

(8) whether the fee is fixed or contingent. [*Pirgu*, 499 Mich at 282.]

In this case, the trial court satisfied the first two steps of the *Pirgu* analysis. The trial court satisfied step one when it accepted the parties' stipulation of an hourly rate of $350 for an attorney and $175 for a paralegal. The trial also satisfied step two of the analysis when it went through the time log of plaintiff's counsel to address which claims were recoverable and which should be omitted. This review led to a baseline amount of $56,106.25.

We agree with defendant, however, that the trial court failed to complete the *Pirgu* analysis by considering the abovementioned factors to determine if the baseline amount should be reduced or increased. See *Pirgu*, 499 Mich at 282 ("In order to facilitate appellate review, the trial court should briefly discuss its view of each of the factors above on the record and justify the relevance and use of any additional factors."). The trial court may have assumed it satisfied step three when it adjusted plaintiff's claimed amount by going through counsel's time log closely. The trial court stated: "[Plaintiff's counsel] indicated every single entry, what the entry was for, the amount of work spent, and I have reduced it by the amount appropriate." However, the adjustment merely served to arrive at a baseline amount. Therefore, by failing to consider the *Pirgu* factors to determine appropriate final adjustments, if any, to the amount of attorney fees awarded, the trial

court erred. *Id*. Accordingly, we vacate the awarded amount and remand to the trial court to review the *Pirgu* factors and determine if an adjustment to the baseline figure is necessary.[5]

We affirm in part, vacate in part, and remand for further proceedings. We do not retain jurisdiction.

/s/ Michelle M. Rick
/s/ Douglas B. Shapiro
/s/ Anica Letica

---

[5] If the trial court concludes on remand that defendant did not unreasonably delay payment of the outstanding medical bills, recalculation of the total fee may be necessary. On that matter, we direct the trial court to our holding in *Komendat*, 334 Mich App at 158, that

> in determining the baseline fee in accordance with *Pirgu*, the court is to include all attorney time that was relevant to recovery of the overdue benefit, even if that time was also relevant to other aspects of the case. Attorney time that was related only to other aspects of the action, and did not bear on the benefits unreasonably withheld, should be excluded from the baseline.