*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RHONDA FOUNTAIN,

        Plaintiff-Appellee,

v

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Defendant-Appellant.

UNPUBLISHED
October 22, 2024
2:23 PM

No. 364209
Wayne Circuit Court
LC No. 18-013041-NF

Before: MARKEY, P.J., and BORRELLO and GARRETT, JJ.

PER CURIAM.

This action for first-party no-fault benefits proceeded all the way through a jury trial. At trial, plaintiff, Rhonda Fountain, sought personal protection insurance (PIP) benefits for services to treat injuries to her left knee and back from defendant, State Farm Mutual Automobile Insurance Company (State Farm). The jury declined to award any benefits connected to Fountain's back injury, but found in Fountain's favor for certain benefits connected to her knee injury. The jury also awarded penalty interest on the outstanding benefits and the court awarded attorney fees of more than double the judgment amount.

At trial, Fountain failed to present necessary evidence to establish that medical services provided by Lederman & Kwartowitz Center for Orthopedics & Sports Medicine (Lederman & Kwartowitz) were charged at a reasonable and customary rate as required by MCL 500.3157 and *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 333 Mich App 457, 481; 960 NW2d 186 (2020), and the trial court should have granted State Farm's motion for a partial directed verdict in this regard. The resulting penalty interest assessed on this provider's outstanding bills was also subject to a directed verdict.

State Farm contends on appeal that the trial court improperly excluded evidence pertaining to whether charges imposed by Phase One Rehab were reasonable and customary. State Farm waived this challenge by failing to argue it below. We therefore affirm the jury's award of benefits in this regard. We further affirm the jury's determination that the benefits connected to the Phase One Rehab claim were overdue, entitling Fountain to penalty interest.

-1-

State Farm also challenges the trial court's imposition of attorney fees under MCL 500.3148. State Farm contends that even if its payment was "overdue," legitimate questions about Fountain's eligibility for continued benefits precluded a finding that it "unreasonably delayed in making proper payment." *Id*. We agree and therefore reverse the award of attorney fees.

We affirm the award of benefits for the services provided by Phase One Rehab and the decision to award penalty interest on those claims. We reverse the denial of State Farm's motions for partial directed verdict as it relates to the services of Lederman & Kwartowitz (both the benefits amount and connected penalty interest award) and the order awarding attorney fees arising from both medical providers' claims. We vacate the judgment to the extent it awards benefits and penalty interest for the Lederman & Kwartowitz claims. And we remand to the trial court to recalculate the remaining penalty interest award.

## I. BACKGROUND

In October 2017, 56-year-old Fountain was riding her bicycle on northbound Telegraph Road near 8 Mile Road, when she was struck by a motor vehicle. Fountain went to the emergency room later that day and was diagnosed with a "proximal tibial plateau fracture of the lateral tibial plateau," i.e. a break at her left knee.[1] Fountain treated with Dr. Collin O'Keefe at Lederman & Kwartowitz for the knee injury. The fracture healed by mid-January 2018, but Dr. O'Keefe noted "degenerative changes throughout" her knee, requiring physical therapy. State Farm provided Fountain approximately $130,000 in PIP benefits for medical services related to her knee injury.

In July 2018, State Farm requested Dr. Matthew Sardelli, a board-certified orthopedic surgeon, conduct an independent medical examination (IME).[2] Dr. Sardelli diagnosed Fountain with: "Left, nondisplaced, posterolateral tibial plateau fracture, related to the accident, resolved and healed." He opined Fountain's fracture healed after three months and asserted Fountain did not require further treatment. Based on this IME, State Farm ceased paying PIP benefits to Fountain and on her behalf in September 2018. State Farm contended that any lingering pain or other issues were caused by a degenerative condition, such as arthritis, and were not connected to the accident.

---

[1] "A tibial plateau fracture is an injury where you break your bone and damage the cartilage on top of your tibia (bottom part of your knee). . . . These high-energy injuries can cause your thigh bone (femur) to push into your tibia like a hammer hitting an anvil." *Tibial Plateau Fracture*, Orthopedic Trauma Association, available at <https://ota.org/for-patients/find-info-body-part/3834#/+/0/score,date_na_dt/desc/> (accessed July 5, 2024).

[2] We use the phrase "independent medical examination" because that is the phrase used by the parties to refer to the examination in question. However, in *Micheli v Mich Auto Ins Placement Facility*, 340 Mich App 360, 364 n 3; 986 NW2d 451 (2022), we observed this "appellation is a euphemistic term of art" and, at least in the insurance context, "an IME involves obtaining a second opinion from a doctor who is entirely selected and paid for by an insurance company, rendering the 'independence' of the examination somewhat questionable."

One month later, Fountain filed suit against State Farm. While the matter was pending, Fountain continued to receive medical treatment for her left knee and underwent surgery in August 2019. Lederman & Kwartowitz had discontinued its services given State Farm's refusal to pay and these later services were provided by Dr. Marvin Bleiberg and Dr. Gary Gilyard. Fountain also treated for knee and back pain with various other providers. Relevant to this appeal, Phase One Rehab leased prescribed medical equipment to Fountain after her knee surgery. State Farm declined to pay Phase One Rehab's $20,935 rental bill. Further, in 2018, Fountain began complaining of back pain and she received medical treatment for that complaint as well. State Farm also denied claims related to that condition.

The matter proceeded to trial. Fountain alleged State Farm owed more than $100,000 in PIP benefits in connection to the alleged accident-related injuries to her back and left knee. At the close of Fountain's case-in-chief, State Farm moved for partial directed verdict on two grounds: (1) Fountain's failure to present evidence supporting that the cost of various services was reasonable and customary and (2) Fountain failed to support her claim for penalty interest and attorney fees with evidence of when she provided State Farm with "reasonable proof of [the] fact and of the amount of loss sustained." In relation to the first ground, State Farm did not seek dismissal of the claims related to Phase One Rehab's services, noting Fountain had presented Phase One Rehab's bills into evidence. The trial court denied the motion as it related to "reasonable and customary charges" billed by Lederman & Kwartowitz. The court acknowledged State Farm's argument that Fountain failed to present evidence supporting a legal element of her claim, but ruled that the Lederman & Kwartowitz medical bills standing alone were sufficient proof to place the issue before the jury.

The court initially held in abeyance its directed verdict decision related to penalty interest and attorney fees, although it acknowledged Fountain had not called State Farm's adjuster as a witness nor proffered the claim file to support if and when she submitted reasonable proof to the insurer. When the motion was revived at the end of the trial, State Farm noted the billing agent from Phase One Rehab testified about the date on which its claims were rejected, but provided no testimony regarding when they were submitted. Therefore, Fountain could not establish that State Farm delayed more than 30 days. Fountain, on the other hand, emphasized Phase One Rehab's "payment logs," showing when bills were submitted, paid, and denied. The court reviewed the first two bills in the extensive packet of evidence and noted the submission dates on the bottom, belying State Farm's position. Accordingly, the court denied the motion for directed verdict.

The jury subsequently returned a verdict partially in Fountain's favor in the amount of $22,393.76. Although not specifically identified, this amount is equal to equipment rental and medical services for Fountain's knee injury: $20,935 to Phase One Rehab and $1,458.76 to Lederman & Kwartowitz. The jury thereby rejected Fountain's claims related to her back injury and several later-arising claims related to her knee injury. The jury awarded penalty interest of more than $9,000 for the overdue bills to Phase One Rehab and Lederman & Kwartowitz.

Following trial, Fountain sought attorney fees, arguing State Farm unreasonably refused to pay Phase One Rehab's bills, forcing this matter to proceed to trial. Fountain requested $82,000 in attorney fees representing more than 200 billable hours at a $400 hourly rate. The trial court determined Fountain was entitled to fees for State Farm's unreasonable denial of her claims. However, the court reduced the billing rate to $250 an hour. Even with this reduction, the court

awarded Fountain more than $50,000 in attorney fees, which was more than double the jury verdict.

State Farm now appeals as of right.

## II. DENIAL OF MOTIONS FOR PARTIAL DIRECTED VERDICT

State Farm argues the trial court erred by denying its motions for partial directed verdict for several reasons. We will address each argument in turn.

## A. STANDARD OF REVIEW

We review de novo a ruling on a motion for directed verdict. *Barnes v 21st Century Premier Ins Co*, 334 Mich App 531, 550; 965 NW2d 121 (2020). This "means that we review the legal issue independently, without deference to the lower court." *Bowman v Walker*, 340 Mich App 420, 425; 986 NW2d 419 (2022) (quotation marks and citation omitted).

> A motion for directed verdict challenges the sufficiency of the evidence. A directed verdict is only appropriate when, viewing the evidence in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law. If reasonable persons could honestly reach different conclusions regarding whether the nonmoving party established a claim, the motion for directed verdict must be denied, with the case being resolved by the jury. [*Barnes*, 334 Mich App at 550 (quotation marks and citations omitted).]

We also must draw "all legitimate inferences from the evidence in the light most favorable to the nonmoving party to determine whether a fact question existed." *Heaton v Benton Constr Co*, 286 Mich App 528, 532; 780 NW2d 618 (2009). Importantly, "an appellate court recognizes the jury's and the judge's unique opportunity to observe the witnesses, as well as the factfinder's responsibility to determine the credibility and weight of trial testimony. Credibility determinations are inappropriate for purposes of ruling on a motion for a directed verdict." *Barnes*, 334 Mich App at 550 (cleaned up).

## B. ANALYSIS

### 1. CHARGES RELATED TO LEDERMAN & KWARTOWITZ

State Farm argues the trial court erred by denying its motion for directed verdict on Fountain's claim for payment in relation to Lederman & Kwartowitz as she did not present any evidence to support that these charges were reasonable and customary.

"The no-fault act provides a comprehensive scheme for payment, as well as recovery, of certain 'no-fault' benefits, including [PIP] benefits." *Spectrum Health Hosps*, 333 Mich App at 479 (quotation marks and citation omitted). "Under [PIP] an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle. . . ." MCL 500.3105(1). PIP benefits are payable for "[a]llowable expenses consisting of reasonable charges incurred for reasonably necessary products, services

and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a).

"The amount that a healthcare provider can 'charge' for products and services is further described in MCL 500.3157," *Spectrum Health Hosps*, 333 Mich App at 480, which stated as follows before the recent amendment of the no-fault act:[3]

> A physician, hospital, clinic or other person or institution lawfully rendering treatment to an injured person for an accidental bodily injury covered by [PIP], and a person or institution providing rehabilitative occupational training following the injury, may charge a *reasonable* amount for the products, services and accommodations rendered. The charge shall not exceed the amount the person or institution *customarily charges* for like products, services and accommodations in cases not involving insurance. [MCL 500.3157 (emphasis added).]

"When read in harmony, §§ 3107 and 3157 clearly indicate that an insurance carrier need pay no more than a reasonable charge and that a health care provider can charge no more than that." *Spectrum Health Hosps*, 333 Mich App at 480 (cleaned up).

> [A] no-fault insurer is not liable for the amount of any charge that exceeds the health-care provider's *customary* charge for a like product, service, or accommodation in a case not involving insurance. *A plaintiff seeking payment of no-fault benefits bears the burden of proving both the reasonableness and the customariness of the provider's charges.* [*Id*. at 480-481 (quotation marks and citations omitted, second emphasis added).]

A provider's customary charges are "determined by looking to the provider's customary charge in cases not involving insurance, meaning those situations where there is literally no insurance in the lay sense of the term. . . ." *Id*. at 481. This requirement prevents a provider from charging a patient more simply because the patient is entitled to no-fault benefits. *Id*.

Fountain presented no evidence that the remaining charges owed to Lederman & Kwartowitz were customary. Nothing in the bills or account ledger supported that Lederman & Kwartowitz would have charged the same amount regardless of whether Fountain carried no-fault insurance. The evidence merely listed the dates of appointments, services provided, and amounts billed. The jury was left to speculate whether the amounts charged were customary, which is impermissible. See *Attard v Citizens Ins Co of America*, 237 Mich App 311, 321; 602 NW2d 633 (1999) (holding that in connection for a motion for judgment notwithstanding the verdict, the court must grant such a motion if the jury was left to speculate or guess about the amount of damages).

---

[3] "With the enactment of 2019 PA 21, the Legislature substantially amended portions of the no-fault act, including MCL 500.3157, effective June 11, 2019." *Spectrum Health Hosps*, 333 Mich App at 465 n 4. Fountain commenced this action before the effective date of the amendment, meaning this case is controlled by the former provisions of the no-fault act. See *id*. Unless otherwise noted, references to the no-fault act are to the version in effect at the time this action was commenced.

Because Fountain failed to meet her burden of establishing that the charges were customary, she was not entitled to PIP benefits in in this regard. See *Spectrum Health Hosps*, 333 Mich App at 480-481.

Fountain also failed to establish the remaining Lederman & Kwartowitz charges were reasonable. The reasonableness prong under MCL 500.3157 "is more broadly concerned with ensuring that a charge is fair and not excessive, and this concern invites comparison to amounts actually being paid on the open market." *Spectrum Health Hosps*, 333 Mich App at 501. "A medical provider's typical price cannot be deemed reasonable unless it reflects an amount that is actually being charged in the marketplace, and a realistic standard considers the amount insurers actually pay and the amount a medical provider is willing to accept." *Id*. at 502.

> [W]hen assessing the reasonableness of a medical charge, relevant evidence includes the full range of charges and payments falling within the pertinent time frame for the particular services, products, and treatment at issue in the case. Among that evidence, the jury may consider the amounts paid by third parties because such evidence throws some light on the reasonableness of the charges. [*Id*. at 503 (cleaned up).]

Again, the only evidence Fountain presented in relation to the Lederman & Kwartowitz charges was the account ledger. She did not present the jury "with the complete picture of the range of charges and payments for medical services on the open market." See *id*. at 503. The jury was again left to speculate whether the amount charged was reasonable. See *Attard*, 237 Mich App at 321. Fountain failed to meet her burden of proof and the trial court should have granted directed verdict in State Farm's favor with respect to Lederman & Kwartowitz's charges. We reverse in part the denial of a directed verdict, and vacate the $1,458.76 judgment awarded in relation to this claim, as well as the associated claim for penalty interest.

## 2. CHARGES RELATED TO PHASE ONE REHAB CLAIM

State Farm contends that the trial court improperly excluded evidence necessary to establish that Phase One Rehab's charges were neither reasonable nor customary. Specifically, State Farm attempted to question Phase One Rehab's representative about the purchase price for the equipment rented to Fountain. When the trial court sustained Fountain's objection, State Farm moved on without arguing for the evidence's admission. State Farm thereby failed to preserve its appellate claim by challenging the exclusion of the evidence below. See *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). This Court recently held the plain-error test does not apply in civil cases, and appellate courts instead apply the raise-or-waive rule. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 359090); slip op at 2-5. "[T]his Court may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Id*. at ___; slip op at 3 (quotation marks and citations omitted).

We discern no ground to fully review this unpreserved evidentiary challenge. However, we briefly note that even if the evidence should have been admitted, its absence would be harmless.

State Farm contends that the purchase price of the equipment was relevant to determining the reasonableness of Phase One Rehab's rental prices. The purchase price of the equipment when it was new would be relevant, but not conclusive, evidence of the reasonableness of the rental price. Phase One Rehab's prices include an initial setup fee and a 24-hour service hotline. Further, we do not know the age of the equipment rented to Fountain and whether its value had decreased over time. State Farm made no attempt to address any other factor relevant to this assessment. We affirm the judgment in this respect.

State Farm also argues the trial court erred by denying its motion for a directed verdict on the issue of penalty interest arising from the outstanding Phase One Rehab bills. "No-fault penalty interest is intended to penalize an insurer that is dilatory in paying a claim." *Williams v AAA Mich*, 250 Mich App 249, 265; 646 NW2d 476 (2002). MCL 500.3142(2) provides that PIP benefits "are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained." To establish entitlement to penalty interest under the statute, the moving party must show that reasonable proof was provided to the insurer and the date on which that proof was provided. Payments cannot be deemed overdue "if they are not supported by reasonable proof." *Nash v Detroit Auto Inter-Ins Exch*, 120 Mich App 568, 572; 327 NW2d 521 (1982) (emphasis omitted).[4]

The record evidence supports the jury's conclusion that the benefits arising from the Phase One Rehab services were overdue. The insurance claim forms presented into evidence were dated October 8, 2019, and State Farm provided Fountain with an explanation of benefits rejecting these claims later that month. Although the jury did not know the exact date on which State Farm received the claim forms, receipt was clearly before State Farm issued the explanation of benefits in October 2019. Further, State Farm had already denied all future claims for Fountain's injuries in September 2018. As the jury determined Fountain was entitled to these benefits, and State Farm had not paid them by the time of trial, they were overdue. Accordingly, Fountain was entitled to penalty interest and the trial court properly denied State Farm's motion for directed verdict in this regard.

## III. AWARD OF ATTORNEY FEES

State Farm argues the trial court erred by awarding Fountain attorney fees under MCL 500.3148(1). At the time Fountain filed her claims and this suit, MCL 500.3148(1) provided "if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment," the injured party's attorney fees "shall be a charge against the insurer in addition to the benefits recovered." We agree the trial court erred as a matter of law, and therefore abused its discretion, by awarding attorney fees as State Farm had a reasonable challenge to the claims.

---

[4] Opinions of this Court issued before November 1, 1990, are not strictly binding under MCR 7.215(J)(1), but are generally afforded deference unless contradicted by more recent caselaw. *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114; 923 NW2d 607 (2018).

A.  STANDARDS OF REVIEW

A request for attorney fees under MCL 500.3148(1) presents a mixed question of law and fact.  *Ross v Auto Club Group*, 481 Mich 1, 7; 748 NW2d 552 (2008).

> What constitutes reasonableness is a question of law, but whether the defendant's denial of benefits is reasonable under the particular facts of the case is a question of fact.  Whereas questions of law are reviewed de novo, a trial court's findings of fact are reviewed for clear error.  A decision is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made.  [*Id*. (quotation marks and citations omitted).]

We review "for an abuse of discretion a trial court's ultimate decision whether to award attorney fees.  An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes."  *Brown v Home-Owners Ins Co*, 298 Mich App 678, 690; 828 NW2d 400 (2012) (quotation marks and citations omitted).  "A trial court necessarily abuses its discretion when it makes an error of law."  *Milne v Robinson*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 164190); slip op at 4 (cleaned up).

B.  ANALYSIS

"A court may award costs and attorney fees only when specifically authorized by statute, court rule, or a recognized exception."  *In re Waters Drain Drainage Dist*, 296 Mich App 214, 217; 818 NW2d 478 (2012).  In this case, the trial court awarded attorney fees under MCL 500.3148(1).  In *Moore v Secura Ins*, 482 Mich 507, 517; 759 NW2d 833 (2008), our Supreme Court elaborated on the entitlement to attorney fees under MCL 500.3148:

> MCL 500.3148(1) establishes two prerequisites for the award of attorney fees.  First, the benefits must be overdue, meaning "not paid within 30 days after [the] insurer receives reasonable proof of the fact and of the amount of loss sustained."  MCL 500.3142(2).  Second, in postjudgment proceedings, the trial court must find that the insurer "unreasonably refused to pay the claim or unreasonably delayed in making proper payment."  MCL 500.3148(1).  Therefore, assigning the words in MCL 500.3142 and MCL 500.3148 their common and ordinary meaning, "attorney fees are payable only on overdue benefits for which the insurer has unreasonably refused to pay or unreasonably delayed in paying."  *Proudfoot v State Farm Mut Ins Co*, 469 Mich 476, 485, 673 NW2d 739 (2003) (emphasis omitted).

As noted, the trial court should have directed a verdict in State Farm's favor in relation to the charges by Lederman & Kwartowitz.  Because Fountain did not establish entitlement to those benefits, they could not be deemed "overdue."  Fountain, therefore, was not entitled to any attorney fees stemming from the nonpayment of that claim.

Although Fountain was entitled to benefits for Phase One Rehab's claims and payment was overdue, Fountain still was not entitled to attorney fees.  "The determinative factor" in assessing whether an insurer unreasonably refused to pay a claim "is not whether the insurer ultimately is

held responsible for benefits, but whether its initial refusal to pay was unreasonable." *Moore*, 482 Mich at 522 (cleaned up). See also *Brown*, 298 Mich App at 691 (reasoning a trial court "must examine the circumstances as they existed at the time the insurer made the decision, and decide whether that decision was reasonable at that time"). The statute requires courts to "engage in a fact-specific inquiry to determine" the reasonableness of the insurer's denial. *Id.*

Fountain's own medical records established that the tibial plateau fracture healed by January 17, 2018. On May 14, 2018, Fountain reported to Dr. O'Keefe at Lederman & Kwartowitz that she was no longer in pain. Dr. O'Keefe's examination revealed Fountain's leg was not swollen and she had 120-degree range of motion with her left leg. Continued physical therapy was prescribed merely to increase strength. The July 17, 2018 IME supported that Fountain's fracture had healed. After reviewing her medical records, Dr. Sardelli concluded in the IME that Fountain also suffered from arthritis and her continued symptoms arose from the arthritis, not the accident-related fracture. In fall 2018, Fountain reported to more than one provider that she had no remaining pain in her knee. Further testing secured by Fountain in 2019 supported that Fountain's symptoms were caused by a degenerative condition, such as arthritis.

The record evidence, including the records from Fountain's providers, suggested that any lingering pain or other knee issues were caused by a degenerative condition, not the motor vehicle accident. State Farm reasonably relied on these medical records, and not just the IME it secured, in denying Fountain's claims beginning in September 2018. Because State Farm did not unreasonably deny or delay in paying Phase One Rehab's claims, the trial court abused its discretion in awarding attorney fees. We reverse the court's order in this regard.

## V. CONCLUSION

We affirm the award of benefits for the services provided by Phase One Rehab and the decision to award penalty interest on those claims. We reverse the denial of State Farm's motions for partial directed verdict as it relates to the services of Lederman & Kwartowitz (both the benefits amount and connected penalty interest award) and the order awarding attorney fees arising from both medical providers' claims. We vacate the judgment to the extent it awards benefits and penalty interest for the Lederman & Kwartowitz claims. And we remand to the trial court to recalculate the remaining penalty interest award.

We affirm in part, reverse in part, vacate in part, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Stephen L. Borrello
/s/ Kristina Robinson Garrett